**Albert D. JOHNSON, Appellant,**

v.

**C.F. ASHBY, M.D., and J.E. Stitcher, M.D., Appellees.**

No. 86–1214.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1986.

Decided Jan. 7, 1987.

James R. Welsh, Omaha, Neb., for appellant.

Robert T. Grimit and James A. Snowden, Lincoln, Neb., for appellees.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ARNOLD, Circuit Judge.

This medical-malpractice diversity action, brought by plaintiff Albert Johnson in the United States District Court for the Dis-

trict of Nebraska,[1] comes to us on appeal from a judgment entered on a jury verdict for the defendants, Drs. C.F. Ashby and J.E. Stitcher. Johnson argues that the District Court abused its discretion and denied his right to a fair trial by imposing in advance of trial a strict time limit on the presentation of evidence. Because Johnson made no timely objection to the District Court's time limitation, we affirm.

## I.

Johnson's complaint, filed May 18, 1984, alleged that he had come under the care of defendants Ashby and Stitcher on October 10, 1982, when he was admitted to the Fillmore County Hospital in Geneva, Nebraska, suffering from an abdominal injury, and that he had remained under their care until October 16, 1982, when he transferred to another hospital. Johnson alleged that the defendants had negligently failed to provide an immediate medical evaluation of his condition, failed to provide adequate and timely medical treatment, failed to perform exploratory surgery, and failed to refer the plaintiff to an appropriate medical specialist.[2]

At a pretrial conference on August 28, 1985, the parties informed the District Court that they believed the trial would take five to seven days, and that it would most likely take six days. On November 19, 1985, a magistrate entered an order scheduling jury selection for December 2, 1985, and setting the case for a six-day trial beginning on Friday, December 13, 1985. Jury selection took place as scheduled.

Then, on December 13, immediately before trial was to begin, counsel for all the parties met with the District Court in chambers. This conference was not recorded; instead, the only knowledge we have from the record of what transpired in this December 13 conference comes from a later, on-the-record discussion between the Court and counsel that occurred on December 20, just after a conference on jury instructions. See Tr. 526–531. Apparently, at the December 13 conference the Court informed counsel that because the days following the six reserved for trial were filled with other trials, it wished to ensure that the case would actually be completed in six days. The Court proposed to establish an hourly time limit; under this plan, each side would be allotted roughly half the hours available for trial to divide as it wished between its opening statement, direct and cross-examination, and closing argument, and the clerk would keep track of the time expended by each side.

When Johnson's counsel objected to this plan, someone suggested as an alternative that Johnson be given the first three days of trial, December 13, 16, and 17, to present his case, that the defendants be given the next two days, December 18 and 19, and two hours on the last day, December 20, to present their case, and that the remainder of the last day be reserved for closing arguments and jury deliberations. Johnson's counsel informed the Court that he did not expect one of his witnesses until December 18, and that he thought he would take until noon of that day to complete his case; nonetheless, he did not object when the Court determined to adopt this second plan. After the conference, the Court entered an order that, *inter alia*, incorporated this second plan for time limitations, and added that normal trial hours might be slightly enlarged when possible to accommodate witnesses and counsel.

After the December 13 conference ended, trial began. On each of the three days allotted for the presentation of his case, Johnson was granted additional time. The defendants completed cross-examination of the final witness Johnson presented early in the morning on December 18. At this point, Johnson simply rested his case, making no objection or motion aimed at extending his time so that he might present fur-

---

1. The Hon. Warren K. Urbom, United States District Judge for the District of Nebraska.

2. The Fillmore County Hospital was named a defendant in Johnson's complaint but was dismissed before trial.

ther evidence, no attempt to introduce further evidence, and, accordingly, no offer of proof as to what further evidence he wished to present.

At the close of all the evidence, in the December 20 conference discussed above, Johnson's counsel for the first time argued that the time limit had improperly prevented him from presenting evidence. In particular, Johnson's attorney contended that he had been forced to forego examining his second expert witness, Dr. Bralliar, on the issue of liability, restricting his examination to the issue of damages, and that he had been precluded from presenting the testimony of a third expert witness, Dr. Mark Smith, the witness whom he had told the Court, in the December 13 conference, he did not expect until December 18. Johnson's attorney conceded that he had made no objection in this regard before the close of the evidence, but suggested that such an objection would have been futile. In response, the Court acknowledged that in the face of such an objection it would still have imposed "some kind" of time limit on the plaintiff. Johnson's counsel did not attempt to introduce the evidence at this point as rebuttal testimony, or even suggest that he would be able to do so; he also made no motion for mistrial in this conference, contenting himself instead with simply having made the arguments noted above. After this conference, the attorneys delivered their closing arguments and the case was submitted to the jury, which later returned a verdict in the defendants' favor.

After trial, Johnson moved for judgment notwithstanding the verdict or, in the alternative, for a new trial, based principally upon the time limitation on the presentation of his case. The Court denied this motion, and Johnson appealed.

## II.

■ Trial courts have discretion to place reasonable limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence. See Fed.R.Evid. 403, 611;

*MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1171 (7th Cir.), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983); *United States v. Article of Drug Consisting of 572 Boxes, More or Less*, 415 F.2d 390, 392 (5th Cir.1969). "[I]n this era of crowded district court dockets federal district court judges not only may but must exercise strict control over the length of trials." *Flaminio v. Honda Motor Co., Ltd.*, 733 F.2d 463, 473 (7th Cir.1984). Nonetheless, it may be an abuse of the trial court's discretion to exclude probative, non-cumulative evidence simply because its introduction will cause delay, and any time limits formulated in advance of trial must be fashioned with this in mind. Such limits should be "sufficiently flexible to accommodate adjustment if it appears during trial that the court's initial assessment was too restrictive." *MCI*, 708 F.2d at 1171 (footnote omitted).

■ Accordingly, we join the Seventh Circuit in disapproving rigid hour limits such as those initially suggested here. See *Flaminio*, 733 F.2d at 473 (disapproving a rigid hour limitation involving a time-keeping method "almost as complicated as in a professional football game.") We further think that limits like those ultimately adopted by the District Court, if too strictly adhered to, would also be improper.

■ Here, however, Johnson sacrificed any challenge he might have made to the District Court's time limits by failing to make a timely objection to those limits and an offer of proof as to the evidence he was unable to introduce. See Fed.R.Evid. 103(a); *Flaminio*, 733 F.2d at 473. See also *Molever v. Levenson*, 539 F.2d 996, 1003 (4th Cir.), *cert. denied*, 429 U.S. 1024, 97 S.Ct. 643, 50 L.Ed.2d 625 (1976). Because Johnson lodged no objection to the time limits until after the close of the evidence, and never attempted to introduce the evidence, it is far from clear that the District Court would have refused to grant more time and excluded the evidence; we know only that the Court would have maintained "some kind" of time limit on the

plaintiff's case. While a party may believe that it would be futile, so far as the trial court is concerned, to make an objection, and that the objection may irritate the Court, it is still incumbent upon the party to make the objection in order to preserve the issue for appeal.[3]

Affirmed.

---

**3.** Of course, even where there has been no timely objection, we may still review for "plain error." *Rogers v. Rulo*, 712 F.2d 363, 367–68 (8th Cir.1983), *cert. denied,* 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984). But this is not an "'exceptional case'" involving a "'miscarriage of justice'" meriting reversal on plain-error grounds. *Id.* at 368, *quoting Johnson v. Houser,* 704 F.2d 1049, 1051–52 (8th Cir.1983) (per curiam). The use of the plain-error exception to the normal rules of appellate practice must be confined to the most compelling cases, especially in civil, as opposed to criminal, litigation.