# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3509

_____

Roger Kight,                                    *
                                                *
      Plaintiff - Appellee,            *
                                                *   Appeal from the United States
    v.                                          *   District Court for the Western
                                                *   District of Missouri.
                                                *
Auto Zone, Inc.,                                *
                                                *
      Defendant - Appellant.           *

_____

Submitted: May 16, 2007
Filed: July 23, 2007

_____

Before MURPHY, HANSEN, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Roger Kight brought this action against AutoZone, Inc., alleging he was fired in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. A jury found AutoZone had discriminated against Kight and that its conduct was willful. The district court[1] denied AutoZone's motion for judgment as a matter of law and motion for a new trial, and judgment was entered for $221,000 in damages, attorney fees, and costs. AutoZone appeals, and we affirm.

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

Roger Kight was hired as a full time salesperson at AutoZone on July 11, 1995. Over the course of his employment he was promoted from counter salesman to parts sales manager and later to assistant manager. From September 27, 1998 until his termination, he worked as the head of the store's commercial division with the title commercial sales specialist. In that position he reported directly to the store manager. He was offered the position of store manager, but declined it because he enjoyed working with the commercial clients. In the year preceding his termination on January 2, 2003, he twice received AutoZone's highest evaluation ranking of "exceeding expectations" during employment reviews. That same year gross sales in Kight's department improved 300% and profits increased 44%. He was 51 years old in 2002.

Steve Sinor was promoted to store manager in April 2001. Sinor made disparaging remarks about the age of his employees nearly every day. Sinor referred to Kight as "old man," "old fart," and "old fat fart" and told him he was "too old to do his job." In the presence of other employees and customers, Sinor announced over the store's intercom that it was time for the old men over fifty to take a pee break. After Kight's department won a regional trophy for sales, Sinor told him he didn't want to shake his "old man's hand" and said, "You're too old and you won't work under my rule." Sinor told him he wasn't going to go anywhere in the company because he was too old. He made general comments that he didn't like working with old people because they were sick, inflexible, and stuck in their ways. Kight began keeping a record of Sinor's age related comments in a notebook which he stored on a shelf in the commercial division of the store. Sinor found the notebook while Kight was on vacation in December of 2002.

Kight received only one written disciplinary warning at AutoZone; that was in a corrective action review (CAR). The CAR was issued on September 2, 1998, for using abusive language, displaying aggressive and intimidating behavior, and for conduct detrimental to AutoZone and its commitment to diversity and respect. The

1998 review stated that Kight could be terminated if he engaged in similar conduct in the future.

Some time after Sinor found the notebook in which Kight had kept track of his comments about age, Kight and Edward Powers got into a heated argument, but assistant manager Rocky Reid separated the two before the fight could become physical. Sinor then arranged for an investigation into Kight's conduct by human resources manager Grant Bagwell.

Bagwell's investigation reported that coworkers Reid and Cecil Hall said Kight belittled people, called them names, and used profanity. Bagwell also interviewed Powers and Sinor before he talked with Kight. Sinor gave Bagwell the notebook in which Kight had written down Sinor's age related comments. Tim Harrison, an AutoZone staff attorney, also reviewed the notebook's contents before it was returned to Kight at his interview. Kight told Bagwell that Sinor had repeatedly made disparaging remarks about his age and that several employees had told him that Sinor had admitted he tried to get Kight fired, but Bagwell responded that it was not his job to investigate Sinor. Powers gave Bagwell a written statement listing his complaints about Kight, including a description of their recent altercation and a claim that Kight forced him to work off the clock.

Bagwell communicated his conclusions to staff attorney Harrison and told him that Kight had engaged in abusive behavior, made inappropriate comments, and used profanity toward staff and customers. Harrison then consulted with the regional manager, Todd Sittig. The two decided to terminate Kight on January 2, 2003, for "inappropriate comments, misconduct toward customers, unprofessional behavior, conduct unbecoming an AutoZoner, conduct detrimental to AutoZone, loss of confidence." Their decision to terminate Kight was based solely on Bagwell's investigation; the 1998 CAR was not considered.

Kight initiated this action on May 6, 2004, alleging AutoZone had discriminated against him because of his age in violation of the ADEA and retaliated against him for keeping the notebook that recorded Sinor's age related comments. The court granted summary judgment on Kight's retaliation claim which was dismissed on February 23, 2006, but it denied summary judgment on his ADEA claim. A jury trial was held from April 3-6, 2006. Kight presented evidence to show that his supervisor Steve Sinor discriminated against him because of his age and wrongfully initiated and influenced a human resources investigation that eventually led to his termination. AutoZone denied discriminating against Kight because of his age. Its theory and evidence was that Kight had been terminated for inappropriate behavior with customers and employees, which Kight claimed was only pretext.

During trial AutoZone sought to enter Kight's 1998 CAR into evidence. The district court excluded it as irrelevant because it had not been used in the decision to terminate Kight and its relevance was further diminished because it was remote in time. AutoZone also made an offer of proof seeking to introduce the CARs and termination notices for four other employees who had been terminated for what it asserted were similar reasons. The district court excluded the reviews and termination notices as well as any testimony about them because these employees had not been listed as witnesses and the record did not provide any context about their situations.

Included in Kight's evidence at trial was his own testimony about his interview with Bagwell. Bagwell had told Kight he would not investigate the complaints he raised about Sinor, and Kight's attempt to contact Sinor's supervisor about his behavior failed because the supervisor cancelled every appointment and told him he was too "thin-skinned." In his testimony Kight admitted that he knew he could be terminated for abusive or disruptive behavior. He called both Ed Powers and Cecil Hall as witnesses. They had complained about Kight to Bagwell, but testified at trial on his behalf. In the interim Powers had filed and lost an age and disability lawsuit against AutoZone and Hall had filed four EEOC charges. They reported that Sinor had coerced their previous negative statements about Kight and threatened to fire them

if they did not comply. Powers testified that the statement he signed had been written by Sinor and then given to Bagwell. Hall testified that Bagwell seemed to have a preconceived idea about what the written report of their interview should say about Kight's behavior and that he had manipulated the written answers. Kight's counsel stated in his closing statement that "There's no corrective action reviews anywhere in his file about any of these things that they are purporting he was doing at the time" and emphasized that Kight was not told that he had acted inappropriately until he was fired.

AutoZone called Todd Sittig, Kight's regional manager, who testified that he had terminated other employees for conduct similar to Kight's, and that "some of them may have been" under the age of 40. Sittig and Harrison both testified that they were the decisionmakers in terminating Kight. When Bagwell took the stand, he was asked why he had not investigated any of the claims made about Sinor's inappropriate behavior and he responded that he did not know.

Counsel discussed jury instructions with the court in chambers. The district court had previously informed them that it did not plan to submit a willfulness instruction, but Kight's attorney requested one at the chambers conference. AutoZone's counsel responded that the court's intention to omit a willfulness instruction was appropriate. The district court subsequently told counsel it had decided to give the instruction if the jury returned an initial verdict in favor of Kight. On the day the case was submitted to the jury, a clerk informed counsel that the court would add the following instruction if there were a verdict for Kight:

> Because you found for plaintiff under instruction No. 8, then you must decide whether the conduct of defendant was willful. You must find that defendant's conduct is willful if you find by the greater weight of the evidence that when defendant discharged plaintiff, defendant knew the discharge was in violation of the federal law prohibiting age discrimination or acted with reckless disregard of that law.

After the jury returned a verdict in Kight's favor on April 6, 2006, awarding $110,500 in compensatory damages, the court gave the willfulness instruction and AutoZone did not object. The jury found that AutoZone's conduct was willful which doubled the amount of the damages.

AutoZone moved for judgment as a matter of law and alternatively for a new trial. The district court denied both motions and upheld the $221,000 damage award and added attorney fees and costs. AutoZone appeals from this order and argues that its motion should have been granted for it was substantially prejudiced by the district court's exclusion of Kight's 1998 CAR and the CARs of the four other employees. AutoZone also argues that the court erred in giving the willfulness instruction and that the award of liquidated damages should be set aside.

In discrimination cases the plaintiff has the burden to present a prima facie case. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir. 1997) (en banc). A prima facie case creates a legal presumption of unlawful discrimination and shifts the burden to the employer to produce evidence of a legitimate, nondiscriminatory reason for the plaintiff's discharge. Id. at 836-37. If the employer carries this burden, the plaintiff has an opportunity to demonstrate that its proffered nondiscriminatory reason was pretext. Id.

AutoZone first argues that the court erred in excluding Kight's 1998 CAR because it would have provided support for its nondiscriminatory reason for terminating Kight. His CAR was relevant it claims, because it involved similar conduct to that for which Kight was terminated and would have shown that he was on notice that abusive conduct could lead to termination. The CAR could have been used to impeach Kight's testimony that he had not spoken inappropriately to customers or used profanity toward other employees; it also could impeach Hall and Powers. AutoZone argues it was substantially prejudiced by this evidentiary ruling because Kight testified that he had not been counseled about his behavior before he was

terminated. It also asserts that Kight's counsel made a misrepresentation in his closing statement by saying that there were no disciplinary records in his file.[2]

The district court concluded that Kight's CAR was not relevant because it had been issued four years before his termination and it had not been considered by those involved in the decision. Moreover, none of AutoZone's witnesses were familiar with the context of the review for it had been issued by a manager no longer employed with the company. The district court has wide discretion in admitting and excluding evidence so long as its exercise of discretion does not unfairly prevent a party from proving its case. Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 716 (8th Cir. 2001). The district court's evidentiary decision "will not be disturbed unless there is a clear and prejudicial abuse of discretion." Bennett v. Hidden Valley Golf and Ski, Inc., 318 F.3d 868, 878 (8th Cir. 2003) (citation omitted). If the court erred by excluding the CAR, reversal would only be appropriate if the error affected a substantial right of the moving party. Fed. R. Evid.103(a); Fed. R. Civ. P. 61; McPheeters v. Black & Veach Corp., 427 F.3d 1095, 1101 (8th Cir. 2005).

It is uncontested that the 1998 CAR was not consulted in AutoZone's decision to terminate Kight, and it was not included in Bagwell's investigative file. The 1998 review was four years before Kight's termination, and the CAR was his only disciplinary record. We conclude that the CAR would not have created an inference that Kight had a pattern or practice of abusive behavior and that it lacked context. It had been given to Kight by a prior manager who was not called to testify, and none of AutoZone's witnesses were familiar with the review or the conduct that led to the issuance of the CAR. Furthermore, its charges were broad and without detail ("disruptive behavior" and "conduct detrimental to AutoZone").

---

[2]The parties dispute the meaning of "file" in this context– AutoZone argues that it meant Kight's employment file, and Kight argues it referred to his investigative file.

The district court is uniquely suited to assess the "relevance and probative value of the testimony," McPheeters, 427 F.3d at 1102, and AutoZone has failed to demonstrate that the district court exercised its discretion in a way that prevented it from proving its case. See Wheeling, 254 F.3d at 716. AutoZone had alternate ways to challenge Kight's testimony because its list of witnesses included several recent coworkers who could have testified about his behavior in the store, but they were not called to the stand. Although AutoZone argued that it sought to introduce the 1998 CAR to show that Kight had notice that he could be terminated for abusive behavior, he himself testified to that fact. We conclude that the district court did not abuse its discretion in excluding the 1998 CAR.

AutoZone also argues that the district court erred in excluding the CARs and termination notices for four other employees. AutoZone contends that these employees were similarly situated to Kight and that the documents would have demonstrated that he had been treated the same as younger employees with similar behavior problems. Their testimony would have supported its argument that the nondiscriminatory reasons offered for terminating Kight were not pretextual.

The district court determined that the CARs of the other employees were not relevant because AutoZone had failed to call them as witnesses or to offer any history about their employment situations. In its order denying the motion for judgment as a matter of law and a new trial, the district court concluded that AutoZone had not been prejudiced by excluding the CARs because regional manager Todd Sittig had testified that he had terminated younger employees for conduct similar to Kight's conduct.

To be able to introduce evidence comparing the plaintiff to other similarly situated employees in a discrimination case, the other employees must have been "similarly situated to the plaintiff in all relevant respects." Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691-92 (8th Cir. 2002) (citations omitted). AutoZone argues that the employees whose reviews and termination notices were excluded are similarly

situated because they worked for stores in the same region and they had also been terminated by Todd Sittig and investigated by Bagwell. AutoZone's offer of proof did not include such facts (except for the fact that Bagwell had investigated the cases), and it has not pointed to any evidence in the record that shows these employees were terminated by Sittig. His signature is not included on any of the CARs or termination notices, and he did not testify that he had fired any of these specific individuals. When employees have been terminated by different decisionmakers, it would be rare for them to be considered similarly situated because any difference in treatment may well be attributable to nondiscriminatory reasons. Tate v. Weyerhaeuser Co., 723 F.2d 598, 606 (8th Cir. 1983).

There is also no evidence establishing that the other employees engaged in behavior similar to Kight's conduct. Employees are not similarly situated if they have engaged in differing degrees of misconduct. Forrest, 285 F.3d at 691-92 (plaintiff not similarly situated when plaintiff's disciplinary record was more serious than the compared employees), Hiatt v. Rockwell Int'l Corp., 26 F.3d 761, 770-71 (7th Cir. 1994) (plaintiff fired for falsifying documents was not similarly situated to employees disciplined for drinking on job). The CARs cite only generalized categories of violations without indicating specific acts linked to the employees so there is no way to make a precise comparison. Moreover, some of the types of infractions listed in the other CARs are different from the reasons given for Kight's termination. For example, other employees were terminated for violating the company's "employee relations policy" or "threatening physical harm," but Kight's termination notice cited "inappropriate comments, misconduct toward customers, unprofessional behavior, conduct unbecoming an AutoZoner, conduct detrimental to AutoZone and loss of confidence." Without more details about the other employees' behavior, it would be impossible for a fact finder to determine if they were similarly situated to Kight.

Finally, there is nothing in the record that shows the ages of the four employees. AutoZone argues that Bagwell would have testified that they were younger than the protected age level, but the documents in the record do not list the ages. The district

court excluded these documents because AutoZone had not developed the employees' history or called them as witnesses. AutoZone has not offered any more context about the employees' history on appeal. AutoZone has not shown that the four employees were similarly situated to Kight in "all relevant respects," Forrest, 285 F.3d at 691-92, and we conclude that the district court did not abuse its discretion in excluding the documents.

AutoZone next argues that the court wrongfully submitted the issue of willfulness to the jury and liquidated damages are not appropriate. An improperly dismissed employee is entitled to double recovery if he shows that his employer willfully violated the ADEA. See 29 U.S.C. § 626(b); Spencer v. Stuart Hall Co., Inc., 173 F.3d 1124, 1129 (8th Cir 1999). A willful violation occurs if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Hazen Paper Co. v. Biggins, 507 U.S. 604, 615 (1993); Spencer, 173 F.3d at 1129.

AutoZone has not preserved this issue because its counsel did not object at the time the willfulness instruction was given. Johnson v. Houser, 704 F.2d 1049, 1051(8th Cir. 1983) (per curiam). In order for a party to challenge a jury instruction on appeal, it must make an objection before the jury retires to deliberate. Fed. R. Civ. P. 51. The objection must be "sufficiently specific to bring into focus the precise nature of the alleged error." Houser, 704 F.2d at 1051. AutoZone argues that its counsel's statement supporting the court's original decision not to give the willfulness instruction was sufficient to preserve its position. That comment was not an objection, however, and it did not offer any reason why a willfulness instruction would be improper. Counsel was informed of the text of the instruction before the jury was instructed and was notified that it would be given if the jury found for the plaintiff. AutoZone had an opportunity to object at that point and also when the instruction was given, but it did not.

Because AutoZone did not object to the jury instruction, we review it for plain error. See U.S. v. Patient Transfer Service, 465 F.3d 826, 827-28 (8th Cir. 2006). Our review is limited to whether the error "seriously affected the fairness, integrity, or public reputation of the judicial proceedings," and we will overturn the district court's decision for plain error only if a miscarriage of justice would otherwise result. Slidell, Inc. v. Millennium Inorganic Chemicals, Inc., 460 F.3d 1047, 1054 (8th Cir. 2006) (citations omitted).

Kight offered evidence during trial that Sinor made age based remarks, launched and influenced the investigation that led to Kight's termination, and threatened other employees regarding their comments about Kight during the investigation. Kight testified that he told Bagwell about Sinor's age related comments and intent to get him fired, but Bagwell did not investigate his complaints. Kight also testified that his attempts to make an official complaint to Sinor's manager about his behavior were rebuffed. Kight presented sufficient evidence upon which the jury could have relied in determining that AutoZone knew or should have known that its conduct could violate the ADEA. See Spencer, 173 F.3d at 1129. The jury instruction properly stated the legal standard for determining whether liquidated damages are warranted, and it was not confusing or misleading. See Brown v. Sandals Resorts Intern., 284 F.3d 949, 953 (8th Cir. 2002). We conclude that submission of the willfulness jury instruction was not plain error.

The company asserts that the erroneous evidentiary rulings and jury instruction required a new trial. We review the denial of a motion for a new trial for an abuse of discretion, with great deference to the district court's ruling. Butler v. French, 83 F.3d 942, 943 (8th Cir. 1996). A new trial is appropriate when the verdict was against the clear weight of the evidence, was clearly excessive, or was the result of passion or prejudice. MacGregor v. Mallinckrodt, Inc., 373 F.3d 923, 930 (8th Cir. 2004). Given our conclusion that the district court did not err in excluding Kight's CAR and the other CARs and termination notices or in giving the willfulness instruction, a new trial is not warranted.

AutoZone finally argues that there was insufficient evidence in support of the verdict so the district court should have granted its motion for judgment as a matter of law. Denial of a motion for judgment as a matter of law is reviewed de novo, applying the same standard as the district court. Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000). The standard of review for sufficiency of proof in an age discrimination suit is "whether [the plaintiff] produced sufficient evidence to allow a jury reasonably to find that [the employer] intentionally discriminated against him on the basis of his age." Denesha v. Farmers Ins. Exchange, 161 F.3d 491, 497 (8th Cir. 1998)(citation omitted).

Kight presented evidence during trial that his supervisor Sinor repeatedly made negative age related comments and general comments that he did not like working with old people. Kight introduced evidence that he had received AutoZone's highest evaluation ranking in his two performance reviews prior to being terminated, and that Sinor had never documented any complaints about his behavior prior to initiating Bagwell's human resources investigation in December 2002. Kight testified that he attempted to complain to upper management about Sinor's disparaging remarks but his attempts were rebuffed. He also offered evidence that Sinor threatened individuals to make statements against him during the investigation and that Bagwell had manipulated the written reports of the interviews with employees. Kight offered sufficient evidence upon which a reasonable juror could have relied in reaching the verdict. We conclude that the district court did not err in declining to overturn the jury verdict and denying judgment as a matter of law.

Accordingly, we affirm the judgment of the district court.

_____