# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.  06-2315

_____

Karen Harris,                                  *
                                               *
         Plaintiff – Appellant,                *
                                               *   Appeal from the United States
    v.                                         *   District Court for the
                                               *   Western District of Missouri.
Dinesh Chand,                                  *
ADT Security Services,                         *
                                               *
         Defendants – Appellees.               *

_____

Submitted: March 14, 2007
Filed: November 13, 2007

_____

Before MELLOY, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Karen G. Harris, an African-American, sued ADT Security Services, Inc., for race discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e.  The jury returned a verdict for ADT.  Harris appeals.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

ADT hired Harris as a Customer Service Specialist in 1997, promoting her to Team Manager the next year.  Harris was responsible to coach her team members and

provide one standard evaluation and three quality assurance (QA) evaluations each month.  In January 2001, Harris began reporting to Unit Manager, Dinesh Chand. Harris kept a  notebook of Chand's comments she considered offensive, such as calling her "girlfriend," and telling her she was wearing a "ghetto outfit."  Harris also notified ADT's human resources specialist of her complaints.

In March 2002, Chand determined Harris had failed to deliver monthly reviews to team members.  Harris and Chand met to discuss her performance.  The next day, Harris began leave under the Family Medical Leave Act. During the leave, ADT temporarily assigned another manager to Harris's team.  The new manager found that Harris had team members' confidential QA passcodes, and entered evaluations in the computer system for absent members, in violation of company policy.  ADT required employees to be present during evaluations and enter their QA codes as verification.

Returning to work, Harris met with Chand and M. Jane Wenk, ADT's Human Resources Manager.  Harris told them her team members gave her their QA codes and that she reviewed their evaluations over the phone.  ADT concluded that Harris was not being honest and falsified company documents.  ADT terminated her.

Harris sued, alleging race discrimination and retaliation.  The district court[1] entered judgment for ADT on all counts.  Harris claims the district court erred in (1) allowing the use of after-acquired evidence, (2) excluding evidence of similarly situated incidents, and (3) restricting the presentation of her case.

---

[1] The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

## II.

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court . . . is ground for granting a new trial or for setting aside a verdict . . . unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

*McPheeters v. Black & Veatch Corp.*, 427 F.3d 1095, 1100 (8th Cir. 2005), *quoting* **Fed R. Civ. P. 61**.

## A.

Harris first contends that the district court erred in allowing ADT to use after-acquired evidence to prove liability, and in prohibiting her questions to an ADT employee about a previous misrepresentation on Harris's application.

During discovery, ADT learned that Harris listed college degrees in her employment and promotion applications, when she had none. ADT also discovered that Harris provided a false explanation of an (initially undisclosed) welfare-fraud conviction. ADT tried to introduce evidence of both misrepresentations as after-acquired evidence on the issue of damages. The district court allowed evidence of the educational misrepresentation but excluded evidence of the criminal conviction, finding "the prejudicial effect of that testimony substantially outweighs any probative value it may have."

This district court has wide discretion in admitting and excluding evidence – reviewed for abuse of discretion – and will not be reversed absent a showing that the ruling had a substantial influence on the jury's verdict. *McPheeters*, 427 F.3d at 1101; *see also* **United States v. Pirani**, 406 F.3d 543, 555 (8th Cir.) (en banc) (a

district court's evidentiary rulings are reviewed for a clear abuse of discretion)[2], *cert. denied* 546 U.S. 909 (2005). Once an employer learns about wrongdoing that would lead to termination, this court does not "require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit." ***McKennon v. Nashville Banner Publ'g Co.***, 513 U.S. 352, 362 (1995). However, the employer must establish that the wrongdoing "was of such severity" that the employee would have been terminated on those grounds alone. *Id.* at 362-63; ***Sellers v. Mineta***, 358 F.3d 1058, 1064 (8th Cir. 2004).

ADT's human resource specialist testified that ADT's policy is to terminate individuals who falsify employment applications, and that two people were terminated during the relevant time period for making educational misrepresentations. Although Harris argues that ADT did not meet its burden of proof, she did not question the sufficiency of ADT's evidence at trial. The district court did not abuse its discretion in allowing ADT to present after-acquired evidence, as ADT proved both policy and practice.

According to Harris, the district court erroneously allowed evidence of her misrepresentations in order to determine liability. Pretrial, the district court stated, "As a preliminary proposition it is my intention to admit after acquired evidence on the issue of liability." However, at trial, the court instructed the jury that evidence that Harris misrepresented her level of education and managerial experience "is admissible only on the issue of damages and is not to be considered on the issue of liability." Contrary to Harris's assertion, the district court limited the use of after-acquired evidence to the issue of damages. *See **McKennon***, 513 U.S. at 360-63.

---

[2] Harris cites the *Blue Bird* case for the standard of review. "*Pirani*'s holding on this issue implicitly overruled our holding in *United States v. Blue Bird*, 372 F.3d 989, 991 (8th Cir. 2004), that we review de novo a district court's admission of evidence." ***United States v. Chase***, 451 F.3d 474, 479 n. 3 (8th Cir. 2006).

Harris admits she misrepresented her education, but claims ADT's failure to terminate her after discovering her welfare-fraud conviction is proof it would not have fired her for the educational misrepresentation. Although Harris argued in her trial brief that evidence of the welfare fraud conviction should be excluded, she now claims this exclusion destroyed her opportunity to show that ADT would not have fired her for the other misrepresentation.

A district court's exclusion of evidence is reviewed for an abuse of discretion. *Elmahdi v. Marriot Hotel Services, Inc.*, 339 F.3d 645, 653 (8th Cir. 2003). A district court abuses its discretion if "evidence of a critical nature is excluded and there is 'no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted.'" *Id., quoting Adams v. Fuqua Indus., Inc.,* 820 F.2d 271, 273 (8th Cir. 1987). Here, Harris argued at trial that the prior misrepresentation should be excluded, and the court did so finding the information was more prejudicial than probative. The district court did not abuse its discretion.

B.

Harris asserts that the district court erred in not allowing her to present evidence relating to a similarly situated incident, in order to establish discriminatory pretext. The district court has "wide discretion in admitting and excluding evidence," and its decision will not be disturbed absent a clear abuse of discretion. *McPheeters,* 427 F.3d at 1101; *see also Elmahdi*, 339 F.3d at 653. Harris must show "(1) that the district court abused its discretion, and (2) that the evidentiary ruling was prejudicial to the point of producing a different verdict." *Mems v. City of St. Paul, Dep't of Fire & Safety Services*, 327 F.3d 771, 779 (8th Cir. 2003).

At trial, Harris sought to present evidence of two white employees (one male and one female), contending both were sufficiently similar. ADT did not object to testimony as to the male employee, but objected as to the female employee. The

female held a different position, in a different department, with a different supervisor. The district court sustained the objection for relevance, explaining that the "allegation here is that Mr. Chand acted . . . in a discriminatory manner and that he retaliated against [Harris]. What some other unit manager did to another employee in a different situation at a different time doesn't advance that theory." The court further explained that "you've got to show me another employee in the same situation with the same decision maker within the same reasonable period of time."

Here, Harris attempted to present the evidence as to the female, first during her case and then during ADT's case. Harris claims that the district court erred because the correct standard is whether the employees were "'involved in or accused of the same or similar conduct and were disciplined in different ways.'" *See Turner v. Gonzales*, 421 F.3d 688, 695 (8th Cir. 2005), *quoting Rodgers v. U.S. Bank,* 417 F.3d 845, 852 (8th Cir. 2005). This is the standard for a prima facie case. *See Turner,* 421 F.3d at 695; *Rodgers*, 417 F.3d at 851. However, "[t]o be able to introduce evidence comparing the plaintiff to other similarly situated employees in a discrimination case, the other employees must have been 'similarly situated to the plaintiff in all relevant aspects.'" *Kight v. Auto Zone, Inc.*, 494 F.3d 727, 734 (8th Cir. 2007), *quoting Forrest v. Kraft Foods, Inc.,* 285 F.3d 688, 691-92 (8th Cir. 2002). "When employees have been terminated by different decision makers, it would be rare for them to be considered similarly situated because any difference in treatment may well be attributable to nondiscriminatory reasons. *Kight,* 494 F.3d at 734. *See generally Riser v. Target Corp.*, 458 F.3d 817, 821 (8th Cir. 2006), *cert. denied* 127 S.Ct. 1382 (2007); *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 701 (8th Cir. 2006); *Johnson v. Univ. of Iowa*, 431 F.3d 325, 330 (8th Cir. 2005); *Rodgers*, 417 F.3d at 851.

Harris asserts that she and the female had the same decision maker – Wenk. Harris proffered evidence from Wenk's deposition that both she and Chand made the decision to terminate Harris. In an affidavit, Wenk stated, "Chand and I determined to terminate Harris." However, at trial Wenk testified that although she consults with

managers, she defers to their determinations and that the managers "actually make the final decision." Wenk was not asked at trial about the statements in her deposition and affidavit, probably because she also stated in her deposition, "of course I always ask the unit manager, this is not my decision to terminate people."

Given Wenk's testimony that the managers "actually make the final decision," Harris has not shown that the court abused its wide discretion in excluding the evidence based on a determination that there were different decision makers.

C.

Harris also argues that the district court abused its discretion in placing time limits on her case. Six months before trial, the court set a three-day time limit – allotting Harris two days and ADT one day. During her case in chief, Harris called 11 witnesses. At the end of the second day at 4:59 p.m., while she was directing questions to her last witness, the district court told Harris that her time was up. Harris asserts she was restricted in questioning her last witness and was not able to call Wenk, Chand, and three other ADT employees due to the time limit.

"Trial courts are permitted to impose reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence." *Life Plus Int'l v. Brown*, 317 F.3d 799, 807 (8th Cir. 2003); *see also **Johnson v. Ashby***, 808 F.2d 676, 678 (8th Cir. 1987) (a judge "not only may but must exercise strict control over the length of trials"). Trial management decisions are within the court's discretion and are reversed only for an abuse of discretion. *Life Plus*, 317 F.3d at 807; *see also **United States v. American Horse***, 671 F.2d 286, 289 (8th Cir. 1982) (length of direct and cross examination is a determination within the court's discretion). Abuse may occur when a court excludes "probative, non-cumulative evidence simply because its introduction will cause delay." *Life Plus*, 317 F.3d at 807, *quoting **Johnson***, 808 F.2d at 678. Time limits formulated before trial

must be "sufficiently flexible to accommodate adjustment if it appears during trial that the court's initial assessment was too restrictive." *Id.* When there is an objection to the exclusion of evidence as a result of time limits, the record must show a proper basis or explanation by the district court for the exclusion. *See First Nat'l Bank and Trust Co. v. Hollingsworth,* 931 F.2d 1295, 1305 (8th Cir. 1991). To preserve this issue for appeal, Harris must have timely objected and made an offer of proof of the evidence excluded by the time limits. *See Life Plus,* 317 F.3d at 807. If no offer of proof was made at trial, this court may review for plain error. *See Hollingsworth,* 931 F.2d at 1305.

When Harris called her final witness at the end of the second day of trial, she said she had only 5 questions for the witness. The court stated she had two minutes for direct; she responded "Got it." Harris initially attempted to read 5 questions and answers from the witness's deposition into the record, but the court correctly denied the request because the witness was present in court. After Harris asked 13 questions, the court indicated that her time was up. Harris's response was "Thank you." She made no objection or offer of proof. On the third day of trial, Harris (apparently) cross-examined that same witness when ADT called him in its case. According to the partial transcript, Harris never made an offer of proof as to her final witness.

Earlier on the second day of trial, Harris "affirmatively move[ed] to withdraw" one of the three other ADT employees as a witness. As to this witness, Harris waived any claim regarding the time limit. Harris made no offer of proof as to the other two ADT employees, and in fact, never even mentioned them at trial (according to the partial transcript provided). It is Harris's burden to make an offer of proof as to the probative value of the witness's testimony. *See* **Fed. R. Evid. 103(a).** The record at trial does not show that the testimony of the three ADT employees has any probative value.[3]

_____

[3] The declaration the dissent cites (to prove the probative value of one employee's testimony) was filed a year before trial and was never mentioned during

Since Harris made no offer of proof as to her final witness and the two (non-withdrawn) ADT employees, we review for plain error. *See Williams v. Wal-Mart Stores,* 922 F.2d 1357, 1360 (8th Cir. 1990). "Plain-error review permits reversal only if the error 'was so prejudicial as to have affected substantial rights resulting in a miscarriage of justice.'" *United States v. Urkevich,* 408 F.3d 1031, 1036 (8th Cir. 2005), *quoting United States v. Griffith,* 301 F.3d 880, 883 (8th Cir. 2002).

Harris called 11 witnesses over two days. At the end of the defendant's case, there was an hour and a half of time remaining. When the court asked Harris if she wished to call witnesses in rebuttal, she did not call a single witness, but simply stated she would "ask the record to reflect my continuing objections." As Harris never objected to the time limit interrupting her final witness, and never attempted to call the other two ADT employees, the district court "certainly committed no plain error by not admitting [the evidence] sua sponte." *See United States v. Lewis,* 436 F.3d

_____

the trial. Contrary to the dissent's implication, the district court did not disallow an offer of proof. The quotations in the dissent all relate to Wenk, Chand, and punitive damages, not to the final witness or the other three ADT employees. Harris was allowed to speak multiple times about her objections as to Wenk, Chad, and punitive damages. In fact, the quotations in the dissent are part of an objection by Harris that proceeds for three full pages of transcript, without mentioning any witness besides Wenk and Chand.

According to the dissent, the district court should have "held an evidentiary hearing, or given some indication that [the three ADT employees] testimony would have impermissibly lengthened the trial." The dissent bases this conclusion on *Hollingsworth,* 931 F.2d 1295. *Hollingsworth*, however, held only that it was clear error for the district court, without explanation, to prohibit the *defendant* from testifying, remanding for a hearing to determine whether the testimony had any probative value. Here, the district court could not have held an evidentiary hearing, or given an indication that the three witnesses' testimony would impermissibly lengthen the case, because Harris did not make the district court aware, at trial, that she wanted to call them.

939, 944 (8th Cir. 2006), *cert. denied* 127 S.Ct. 3042 (2007); *Life Plus,* 317 F.3d at 807 (finding no abuse of discretion where plaintiff did not make an offer of proof concerning what evidence it was forced to forego due to time limits).

Harris did make an offer of proof as to Wenk and Chand, but only in regard to punitive damages. On the morning of the second day of trial, Harris agreed that she would examine Wenk and Chand on cross when ADT called them as witnesses, rather than in her case-in-chief.[4] When ADT moved for judgment as a matter of law at the close of Harris's case, Harris told the district court she had submitted sufficient evidence to survive the motion. She made no objections at that time. The district court denied the motion as to the race discrimination and retaliation claims, but granted the motion as to punitive damages. Harris objected to the denial of the punitive damages claim, stating that she did not have enough time to call Wenk. The following morning, Harris again argued she needed time to call Wenk and Chand. Harris stated she "want[ed] to make a record on a couple of items, specifically limiting [the trial] to two days and particularly the ruling as a matter of law and denial of punitive damages." She proceeded (for three pages of transcript) to discuss how the testimony of Wenk and Chand would have assisted her punitive damages claim.

The district court then reconsidered the timing issue and determined that the amount given was sufficient:

> The time limitations imposed in this case, [counsel,] were imposed exercising my judgment after ten years as a trial judge and 35 years of practicing law. That when you strip away everything else, this case is a garden variety race discrimination case which should be tried in 3 or 4 days.

---

[4] There was some confusion whether ADT planned for Wenk and Chand to be present in court during Harris's case-in-chief. When they were not present (Harris had not subpoenaed them), Harris agreed to examine them on cross, stating, "regardless of who's calling them, they're still going to be called."

> We spent a lot of time in the plaintiff's case talking about issues that I thought were really not germane to the core issues. And had there been a little more focus, I think that all the evidence necessary to fairly present the claim could have and should have been presented in two days.

Harris requested the opportunity to call Wenk and Chand in rebuttal if ADT did not call them in its case. The court responded that ADT would call them. The court left open the option to reconsider the issue of punitive damages at the close of all the evidence. Harris examined Wenk and Chand on cross-examination. During her examination of Wenk, Harris elicited testimony about QA training, ADT's discipline policies and procedures, the (not-terminated) male manager who had his team members' QA codes, and Wenk's assertion that she defers to management in employment decisions. In sum, Harris's cross-examination consumed about three-fourths of Wenk's testimony, lasting over an hour.[5] Harris did not call Wenk or Chand in rebuttal.

Because Harris made an offer of proof as to Wenk and Chand on the issue of punitive damages, this court will review the time limit for an abuse of discretion as to those witnesses. This court disapproves rigid time requirements. *See **Life Plus,*** 317 F.3d at 807 (reemphasizing "disapproval of rigid hourly time constraints at trial"). The district court here, however, did not abuse its discretion as to Wenk and Chand. Harris has failed to show that the limits affected a substantial right. She was able to examine or cross-examine every witness on her list (except the two ADT employees whom she did not mention at trial). Harris's only claim as to Wenk and Chand was that their testimony in her case-in-chief was necessary for her punitive damages claim. The district court, however, allowed for the issue of punitive damages to be reconsidered at the end of all the evidence – after Wenk and Chand testified – rather than at the end of Harris's case-in-chief. The district court did not exclude probative,

---

[5] The partial trial transcript submitted on appeal does not indicate the length of Chand's testimony on cross-examination.

non-cumulative evidence of which it was made aware. The record shows a proper basis for, and a sufficient explanation of, the reasons for the time limits. The district court did not abuse its discretion in its administration of the time limits as to Wenk and Chand.

III.

The judgment of the district court is affirmed.

SMITH, Circuit Judge, concurring in part and dissenting in part.

Because I believe that the district court placed an impermissibly rigid time constraint on the plaintiff's case, I respectfully dissent.

As the majority notes, this court has discouraged district courts from setting the types of rigid time constraints imposed here. *Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir. 1987); *Life Plus Intern. v. Brown*, 317 F.3d 799 (8th Cir. 2003) ("We reemphasize our disapproval of rigid hourly time constraints at trial."). A district court may impose time constraints to prevent undue delay, waste of time, or the needless presentation of cumulative evidence. *Id.* These mischiefs, however, were absent in the instant case. In fact, the record shows that the district court sought to expedite the case, viewing it not as unusually time consuming but instead as rather routine. The court stated:

> The time limitations imposed in this case [] were imposed exercising my judgment after ten years as a trial judge and 35 years of practicing law. That when you strip away everything else, this case is a garden variety race discrimination case which should be tried in 3 or 4 days.

(Trial Transcript, P. 68).

The district court imposed these rigid time constraints before the conclusion of

-12-

discovery and six months before trial had begun. (Doc. 162). We have discouraged such strict and apparently arbitrary time limits. In *First National Bank and Trust Co. v. Hollingsworth*, 931 F.2d 1295, 1305 (8th Cir. 1991), where the district court sought "to bring the trial to a rapid conclusion," we held that the district court abused its discretion because the record suggested an improper motive and the record failed to indicate a proper basis for the time constraint. *Id.* ("In the absence of some proper basis in the record, or, more preferably, some explanation from the district court for its blanket prohibition of the defendant's testimony, we must conclude that the district court abused its discretion."); *see also Johnson*, 808 F.2d at 678 ("It may be an abuse of the trial court's discretion to exclude probative, non-cumulative evidence simply because its introduction will cause delay, and any time limits formulated in advance of trial must be fashioned with this in mind."). Here, the time constraints prevented the plaintiff from offering proof crucial to the cause of action, not mere cumulative testimony. Therefore, I conclude that the district court abused its discretion.

Harris preserved this issue by objecting, telling the court that "[t]he time [constraint] has been so prejudicial that the decision maker and the actual harasser or whatever you want to name him, were [not] presented to testify." Further, it appears that Harris attempted to make offers of proof. "Your Honor, in addition to that I also want to make a record on a couple of items specifically limiting it to two days . . . ." And also, "I think that, one, it's important that I make a record that the plaintiff has not been able to zealously advocate her position." No offer of proof appears to have been permitted. A district court clearly errs when it refuses to allow a party to make an offer of proof. *Gray v. Lucas*, 677 F.2d 1086, 1100 (5th Cir. 1982). Therefore, I believe Harris sufficiently objected and made a reasonable effort to make an offer of proof.

Additionally, I believe the district court's time limitations prejudiced a substantial right. Fed. R. Evid. 103. Specifically, although Harris was able to elicit

testimony from Chand and Wenk,[6] the record does not show why the testimony of Harris's three other proposed witnesses would have lacked probative value. Harris claims that these three ADT employees would have discredited ADT's reason for her termination— the unauthorized possession and use of confidential QA codes. In fact, one of these witnesses' declaration states that, "There was also never any policy in effect stating that the QA codes were confidential nor was there a policy refraining the managers from possessing the QA codes." The jury may not have believed Harris's witnesses but she should have been given the opportunity to present them.

Lastly, the district court noted that prior to the forced conclusion of her case, Harris had been inefficient and presented issues that were not germane. Assuming this to be true, it would still not justify foreclosing three witnesses without a showing that their presentation would have caused undue delay, wasted time, or needlessly presented cumulative evidence. If the court had held an evidentiary hearing or given some indication that these witnesses' testimony would have impermissibly lengthened the trial, then the district court might have been justified in its observation. *Hollingsworth*, 931 F.2d 1295, 1305 (stating that the trial court should have held an evidentiary hearing to determine the effect of the evidence excluded by its desire to bring the trial to a quick conclusion).

For these reasons, I dissent.

_____

[6]I agree with the majority that our analysis is complicated by the inexplicable absence of a complete trial record.