# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-3365

_____

Mark Cheatwood

*Plaintiff - Appellant*

Caryl Cheatwood

*Plaintiff*

v.

Baptist Health, formerly known as Sparks Regional Medical Center

*Defendant*

Dr. Daniel Mwanza; Dr. Michelle Horan

*Defendants - Appellees*

Unknown Medical Doctors, 1-10; Unknown Hospital Staff, 1-10; Community Health Systems, Inc.

*Defendant*s

Fort Smith HMA, LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fort Smith

_____

Submitted: September 20, 2023
Filed: February 8, 2024
[Unpublished]
—————

Before SMITH, Chief Judge, MELLOY and ERICKSON, Circuit Judges.

—————

PER CURIAM.

Mark Cheatwood appeals the district court's[1] denial of his motion for a mistrial, and its denial of his motion to set aside the judgment and order a new trial under Federal Rules of Civil Procedure 59 and 60. For the reasons explained below, we affirm.

## I. *Background*

In July 2017, Cheatwood operated a boom truck as part of his employment with the City of Fort Smith, Arkansas. The truck was equipped with outriggers that extended to stabilize it while the boom was in use. At the time of Cheatwood's accident, the truck's position prevented him from fully extending the outriggers. As a result, while Cheatwood was using the truck to lower a heavy pump into a creek, the truck tipped over, tossing him into the inlet. He fell approximately 30 feet, suffering multiple injuries to his ankles, wrist, and spine.

An ambulance transported Cheatwood to the Sparks Regional Medical Center (Sparks) emergency room located in Fort Smith, Arkansas. While at Sparks, Dr. Arthur Johnson, a neurosurgeon, prioritized treatment of Cheatwood's spinal injury over his ankle. But because the hospital lacked the necessary medical resources to treat both of Cheatwood's injuries, Sparks transferred him to the University of Arkansas for Medical Sciences Medical Center (UAMS) in Little Rock, Arkansas. After his arrival, UAMS's medical staff prioritized Cheatwood's ankle over his

—————

[1]The Honorable P.K. Holmes, III, United States District Judge for the Western District of Arkansas.

spinal injury due to the deteriorating condition of his leg because of an infection. He underwent multiple procedures that culminated in a below-the-knee amputation of his left leg. He subsequently sued Sparks for the loss of his leg. Cheatwood contends that had Sparks initially prioritized his ankle, as UAMS did, the amputation would have been obviated.

Cheatwood sued Sparks and multiple hospital staff in July 2019. Following discovery, the case proceeded to trial. Cheatwood called Dr. Johnson as a witness. After cross-examination by the defense, Cheatwood's counsel redirected Dr. Johnson. The district court interposed a comment on Dr. Johnson's testimony during Cheatwood's redirect. Cheatwood believed the court's comment was prejudicial and moved for a mistrial.[2] The district court denied his motion.

Ultimately, the jury found for the defendants, and the district court entered judgment on October 7, 2022. On November 7, 2022, Cheatwood filed both his motion to set aside the judgment and order a new trial under Rules 59 and 60 and a notice of appeal. The district court denied his motion, and he amended his notice of appeal to include review of the court's denial.

We have jurisdiction under 28 U.S.C. § 1291.

## II. *Discussion*
### A. *Mistrial Motion*

We review a district court's denial of a motion for a mistrial for abuse of discretion. *Warger v. Shauers*, 721 F.3d 606, 609 (8th Cir. 2013). A district court "has the right to fairly comment upon the evidence." *United States v. Carter*, 528

---

[2]Cheatwood also moved for a mistrial because the district court denied his request to call a witness to clarify how much he received in workers' compensation since the accident. Because Cheatwood's brief does not sufficiently discuss the denial of that mistrial motion, the issue is waived, and we will not address it. *Beadle v. City of Omaha*, 983 F.3d 1073, 1075 (8th Cir. 2020) (citing *Meyers v. Starke*, 420 F.3d 738, 743 (8th Cir. 2005)).

F.2d 844, 851 (8th Cir. 1975). A "limitation on this discretion is that the comments must not preclude a fair evaluation of the evidence by the jury." *Warren v. State Farm Fire & Cas. Co.*, 531 F.3d 693, 701 (8th Cir. 2008) (internal quotation marks omitted). "[T]his court must . . . also conclude that such activities prejudiced [a party] before a new trial may be ordered. . . ." *Carter*, 528 F.2d at 851.

We conclude that the district court did not abuse its discretion when commenting on the evidence. During his direct examination, Dr. Johnson testified that Sparks and UAMS had different capabilities. Specifically, he said that Sparks "couldn't deal with both" Cheatwood's ankle and spinal injuries. R. Doc. 241, at 260. Given the resources at Sparks, Dr. Johnson prioritized Cheatwood's spine over his ankle because "if you do the orthopedic surgery without doing the spine surgery, you . . . run the risk of shearing off . . . nerve roots because of . . . bone fragments that are inside the spinal canal." *Id.* at 254. Given the limited resources at Sparks and "based on the fact that both areas . . . needed to be dealt with," the hospital transferred Cheatwood to UAMS. *Id.* at 260.

The district court's comment came during Cheatwood's redirect of Dr. Johnson. While Dr. Johnson was explaining that "different facilities have different capabilities" in response to Cheatwood's question about why he prioritized the spinal injury over the ankle, the court interjected and said, "The witness testified that UAMS had the stabilization components that Sparks Hospital did not." R. Doc. 241, at 262.

The district court's comment that Dr. Johnson "testified that UAMS had the stabilization components that Sparks Hospital did not" is a fair comment upon the evidence. *Id.* Although Dr. Johnson did not use this exact phrasing in his testimony, the record shows that the court's comment was no more than a clarifying summary of an undisputed portion of the doctor's testimony. Dr. Johnson stated that some facilities have more stabilization capabilities than Sparks, including special operating tables that help stabilize the patient's spine. Although Dr. Johnson did not specifically say that UAMS had those stabilization capabilities, he did testify that

-4-

"[a]t UAMS, they actually had all the specialists that they needed" and "all of the components they needed" to treat both of Cheatwood's injuries and deal with any complications arising from his treatment plan. *Id.* at 240. On this record, the district court's clarifying comment was not an abuse of discretion.

These facts fall short of cases where we found reversible error based on a court's comment during trial. *See, e.g.*, *Rush v. Smith*, 56 F.3d 918, 923 (8th Cir. 1995) (reversing the denial of a new trial because the trial judge's comment was "an inadvertent and indirect suggestion that [the plaintiff] and his corroborating witnesses gave a consistent account of the events because of racial solidarity, and not because of their sworn duty to tell the truth."); *Champeau v. Fruehauf Corp.*, 814 F.2d 1271, 1275–77 (8th Cir. 1987) (holding there was prejudice when the court interfered with expert testimony 145 times); *cf. Russell v. Anderson*, 966 F.3d 711, 722–24 (8th Cir. 2020) (explaining that a court's "comment[] on causation only three times" did not plainly destroy the overall fairness of the trial); *Van Leirsburg v. Sioux Valley Hosp.*, 831 F.2d 169, 172–73 (8th Cir. 1987) (noting as "problematic" a court's comment that a hospital's practice of not keeping certain medical records was "strange," but that "a few improper comments do not automatically necessitate a reversal").

Thus, the district court did not abuse its discretion in making the comment, and we affirm the district court's denial of Cheatwood's motion for a mistrial.

## B. *Motion for Vacatur and a New Trial*

Cheatwood sought vacatur of the district court's judgment based on Rules 59 and 60. The district court correctly denied Cheatwood's motion under both Rules.

As to Rule 59, Cheatwood argues that the district court denied him a fair trial because it misled and unduly influenced the jury, it was argumentative and acted as an advocate, and a new trial is required under the "totality of the charge." Appellant's Br. at 33. Inquiry into these arguments' merits, however, is foreclosed because Cheatwood's Rule 59 motion was untimely. "A court must not extend the time to act

under Rule[] . . . 59(b) . . . ." Fed. R. Civ. P. 6(b)(2). Rule 59(b) states, "A motion for a new trial must be filed no later than 28 days after the entry of judgment." The district court entered final judgment in Cheatwood's case on October 7, 2022. Cheatwood filed his motion for a new trial on November 7, 2022—31 days later. Therefore, the district court properly denied Cheatwood's motion for a new trial under Rule 59.

Cheatwood's Rule 60 motion does not suffer the same flaw. *See* Fed. R. Civ. P. 60(c)(1) (permitting a motion under Rule 60 if it is "made within a reasonable time"). Rule 60 permits additional grounds for relief from a judgment. For example, a movant may seek relief from a final judgment based on "mistake, inadvertence, surprise, or excusable neglect"; "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"; fraud; issues with the judgment itself; or other reasons that may justify relief. *Id.* at 60(b)(1)–(6).

Cheatwood argues that the district court violated Rule 60 because it improperly intervened in the trial. To support his argument, he likens his case to two others where we found reversable error, *United States v. Van Dyke*, 14 F.3d 415 (8th Cir. 1994), and *United States v. Singer*, 710 F.2d 431 (8th Cir. 1983) (en banc). Because the appellants in those cases did not seek relief based on Rule 60, and the facts are different from Cheatwood's case, these cases offer no support for Cheatwood's appeal.

In *Van Dyke*, we held that the district court committed several prejudicial errors. There, the district judge "not only got into matters that should have been left to the prosecutor on cross-examination; he also essentially 'took over' on behalf of the prosecutor—very possibly giving the jury an impression that he and the prosecutor were working toward a common goal." *Van Dyke*, 14 F.3d at 419. The district court also refused to admit exculpatory evidence and rejected an expert witness's opinion. *Id.* at 420–22. Those intrusions, "considered as a whole," prejudiced the defendant's right to a fair and impartial trial. *Id.* at 424.

The facts here are wholly dissimilar. The district court's comment merely and accurately summarized Dr. Johnson's testimony. Moreover, nothing in the record shows the district court intruding into matters properly left for defense counsel. Therefore, *Van Dyke* is distinguishable and does not support Cheatwood's case.

*Singer* involved even more judicial intrusion than *Van Dyke*. There, the district court nearly assumed the role of the government's co-counsel, stating— perhaps tongue in cheek—that it was not going to try the case for the government, "like [it had] been doing up to this time." *Singer*, 710 F.2d at 433 (emphasis omitted) (internal quotation marks omitted). The court also helped the government make its objections and question witnesses. For example, when the government was questioning a witness, the district court interjected, "Lay a little more foundation than that." *Id.* The court's actions in *Singer* lacked fairness. *Id.* at 437.

This case is not like *Singer*. A district court can interject "in order to expedite the presentation of the evidence." *Harris v. Steelweld Equip. Co.*, 869 F.2d 396, 403 (8th Cir. 1989). Here, the record reflects that the district court sought such expedition. Throughout the trial, counsel for both sides and the court indicated an awareness of the trial's pace. For example, the trial transcripts contain quotes such as the following: "I'm trying to speed things up" (Cheatwood' counsel), R. Doc. 241, at 232; "[l]et's kind of speed this up a little bit" (district court), R. Doc. 243, at 18; and "trying to speed this along, I think it's gone on a little bit longer than any of us have anticipated" (defense counsel), R. Doc. 243, at 29. All parties and the court were mindful of the trial's pace. The court admonished Cheatwood's counsel to keep the case flowing since it had proceeded poorly.

For similar reasons, Cheatwood's argument that the district court abused its discretion by prohibiting testimony solely to control time is unsuccessful. We have held that district courts can "impose reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence." *Harris v. Chand*, 506 F.3d 1135, 1141 (8th Cir. 2007)

(internal quotation marks omitted). Cheatwood argues that the court restricted his examinations to control time but placed no similar restrictions on opposing counsel. In *Harris*, we denied a similar argument because "Harris . . . failed to show that the limits affected a substantial right." *Id.* at 1143. Cheatwood does not explain how the court's efficiency measures affected a substantial right. And he failed to proffer evidence that the district court's handling of the case affected the jury's decision. On this record, we conclude that the district court did not abuse its discretion in limiting examination time.

### III. *Conclusion*

Accordingly, we affirm the district court's judgment.

_____