**Affirmed as Modified and Majority and Dissenting Memorandum Opinions filed August 28, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00663-CV

---

### JEFFERSON COUNTY, TEXAS, Appellant

### V.

### DONNA DAVIS, Appellee

---

**On Appeal from the 60th District Court
Jefferson County, Texas
Trial Court Cause No. B-182,252**

---

## M E M O R A N D U M   O P I N I O N

Jefferson County appeals from a jury verdict awarding over $1.3 million in damages to Donna Davis for her wrongful termination from the Jefferson County Purchasing Department. The County contends the evidence is legally insufficient to support the jury's findings related to Davis's (1) Section 1983 claim based on the County's violation of her First Amendment right to free speech, and (2) age-discrimination claim based on the Texas Commission on Human Rights Act

("TCHRA"). The County also contends that there is no evidence to support the damages awarded for future mental anguish.

We hold that there is legally sufficient evidence to support the jury's finding of age discrimination, and because TCHRA authorizes recovery of the damages awarded, we need not review the sufficiency of the evidence to support the jury's findings on Davis's federal claim. We agree, however, that there is no evidence to support the jury's assessment of damages for future mental anguish. We accordingly modify the judgment to eliminate the award of those damages, and affirm the judgment as modified.

## I. AGE DISCRIMINATION

In its seventh issue on appeal, the County contends there is no evidence that the County discriminated against Davis based upon her age. In particular, the County argues that there is no evidence to support the jury's affirmative answer to Jury Question No. 1, which asked whether age was a motivating factor in the County's decision to terminate Davis's employment.

First, we will review the law regarding age discrimination generally. Then, we identify the standard of review for a legal-sufficiency challenge, and we review the relevant evidence. Finally, we conclude that Davis adduced legally sufficient evidence to support the jury's answer to Jury Question No. 1.

## A. Proof of Age Discrimination Generally

Davis sued the County for violating the Texas Commission on Human Rights Act, which prohibits employers from discriminating against or discharging an employee based on age. *See* TEX. LAB. CODE ANN. § 21.051 (West 2006); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam). Accordingly, Davis "bore the burden of proving that age was a motivating factor"

2

in the County's decision to discriminate against her. *AutoZone*, 272 S.W.3d at 592; *see also* TEX. LAB. CODE ANN. § 21.125(a) (West 2006) ("[A]n unlawful employment practice is established when the complainant demonstrates that . . . age . . . was a motivating factor for an employment practice, even if other factors also motivated the practice . . . .").

In the charge, the jury was instructed that "[a] 'motivating factor' in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision." Davis accordingly had to prove that age was a motivating factor for her termination, not the sole but-for cause. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001); *see also Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (per curiam).

Davis could satisfy her burden of proof in either of two ways. "The first method, rather straightforward, involves proving discriminatory intent via direct evidence of what the defendant did and said." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). The second method involves a burden-shifting framework and requires the employee to first prove the elements of a prima facie case, which is that the employee was "(1) a member of the protected class under the TCHRA, (2) qualified for his or her employment position, (3) terminated by the employer, and (4) replaced by someone younger." *Id.* at 642. Satisfying the prima facie case "'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id.* at 634 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S. Ct. 2943, 2949–50, 57 L. Ed. 2d 957 (1978)). Next, under the second method, if the employer produces evidence of a "legitimate, non-discriminatory reason for its decision to terminate" the employee,

3

then the employee nonetheless may prevail by proving "that the employer's stated reason for the adverse action was a pretext for discrimination." *Quantum Chem. Corp.*, 47 S.W.3d at 476.[1] Still, an employee may prevail even if the employer's "reason, while true, is only one reason, and discrimination was another, 'motivating,' factor." *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

When reviewing pretext and motivating-factor evidence under the second method of proof, courts also will consider statements and remarks by the employer as additional evidence of discrimination. *See Laxton v. Gap, Inc.*, 333 F.3d 572, 583 (5th Cir. 2003); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225–26 (5th Cir. 2000).[2] "The value of such remarks is dependent upon the content of the remarks and the speaker." *Russell*, 235 F.3d at 225 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151–53, 120 S. Ct. 2097, 2111, 147 L. Ed. 2d 105 (2000)). A reviewing court may not ignore comments showing an age-related animus merely because they were not made in the direct context of termination. *See Reeves*, 530 U.S. at 152, 120 S. Ct. at 2111. But the Texas Supreme Court has held that statements and remarks by the employer "may serve as evidence of discrimination only if they are (1) related to the employee's protected class, (2) close in time to the employment decision, (3) made by an individual with authority over the employment decision, and (4) related to the employment decision at issue." *AutoZone*, 272 S.W.3d at 593.

---

[1] "Proving the employer's stated reason for the firing is pretext is ordinarily sufficient to permit the trier of fact to find that the employer was actually motivated by discrimination." *Quantum Chem. Corp.*, 47 S.W.3d at 481–82 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48, 120 S. Ct. 2097, 2108–09, 147 L. Ed. 2d 105 (2000)).

[2] Federal cases are persuasive authority for interpreting the TCHRA. *See Garcia*, 372 S.W.3d at 633–34.

**B.      Legal-Sufficiency Standard of Review**

When analyzing a challenge to the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005). "Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827.

**C.      The Evidence**

Davis was born in 1950 and began working at the Jefferson County Purchasing Department in 1993. In April 2007, Douglas Anderson was hired as the "purchasing agent"—the head of the department. Within a few weeks of taking over the office, he met with each employee individually. Anderson testified that in these meetings, he asked each employee his or her age.

Davis testified about her initial meeting with Anderson:

> [Anderson] asked me—he started to ask. He said, "How old are—" and then he said, "When did you graduate?" And I told him. And then he did the math and said, "Oh my God." He slid down in his chair like he was going to slide off his chair. And he said, "You're old enough to be"—I thought he was gonna say his mother—but he said "my oldest sister."
>
> . . . .
>
> He said, "Why are you still working here?" He said, "You're too old to be working." He said, "You're too old to be working here." And then he said—he asked me how old my husband was and I told him. At that time I believe he was 59. And he asked me if he still was working and I said yes, he was, he had worked at a refinery with the same employer for I believe it was 39 years at that time. And, again, he was just astounded.

He said, "He's too old to be working. Why is he still working? Why has he not retired?" Then he asked me why I had not retired yet.

And I said, "I'm not eligible. I'm not old enough. I haven't been here enough years for my age and my years of service to equal 75 years, which is the requirement for retiring."

And he said, "Well, are there no incentives for early retirement?"

And I said, "Not that I have ever heard of." I didn't know of any.

And he said, "Well, there must be incentives for early retirement." He said, "I'm going to look into that and I'm gonna work on that."

Davis stated that she told Anderson she did not want to retire. Anderson then asked her, "What could you possibly see yourself doing here in five years?" She told him that she enjoyed her job and had not made any plans to retire. Anderson testified that he did, in fact, speak with Davis during the initial one-on-one meeting about her age, her husband's age, and retirement.

Davis testified that she spoke to Deborah Clark about this meeting soon afterward. Clark was the assistant purchasing agent and second-in-command in the department. Clark had been Davis's supervisor for many years. Clark told Anderson that Davis was going to file a complaint about his comments on Davis's age. Anderson testified that around the same time, he asked Clark if he should fire Davis. Clark told Anderson that she did not want Davis fired.

Davis testified further that Anderson would bring up her retirement and "senior" status in every full-staff office meeting. She could not say for sure how often the staff meetings were held—whether they were weekly or every other week.[3] But Anderson repeatedly said that Davis would "be leaving the office first,

---

[3] Another Purchasing Department employee, Tamara Edwards, testified that there were weekly office meetings. Clark testified, "We had many staff meetings."

6

that [she] would be the very first person to go." Davis testified that Anderson "would always say, 'And Donna's gonna be the next one to go. Donna's gonna be leaving soon. Donna will be gone soon. Donna will be the first one to go." Anderson testified that he did, in fact, make such a comment about Davis in a staff meeting.[4]

Davis testified that Anderson would refer to her as "the senior person" and say "she's senior," even though he knew that there were two other employees who had been there longer than Davis. She testified, "[H]e would say I was the senior person. And, so, I knew he was referring to my age, not to my years of service, not to my experience in the office. He was talking about how old I was." She explained, "I didn't have seniority. I was only the oldest one in there." She testified that Anderson would remind her "every chance he got" of how old she was and that she needed to go and that it was time to retire: "And he reminded the whole office how old I was and I needed to go and it was time to retire." Davis also testified about a comment Anderson made on her birthday in February 2008, weeks before she was fired: "Mr. Anderson said, 'It's a good thing we don't have any candles because it would set that cake on fire.'"

Anderson testified that although he discussed Davis's termination as early as

_____

[4] Other witnesses corroborated Davis's testimony. For example, one Purchasing Department employee, Tina Williams, provided a written statement, reporting that Anderson would say in meetings that:

> Donna would be retiring soon. Donna would tell him, "I have not made that decision yet, I will be eligible to retire." He would chuckle and would say "of course ma'am." When the retirement meetings were going on, he asked Donna if she got her invite. Donna said, "Yes." He said something like "Don't miss it, and make sure you go."

Another Purchasing Department employee, Alyce Williams (no relation to Tina), testified that in the first staff meeting, Anderson "said to Donna something to the effect of 'You must be about ready to retire' or 'we should look in to seeing how you can retire.'" Alyce thought this comment was "directed at her age."

7

a few weeks into his tenure in the Purchasing Department, he did not decide to terminate Davis until the first week of December 2007. He claimed to have decided to terminate Davis because she asked for a meeting with him and lodged a number of complaints against Clark. Anderson described those complaints as follows:

> [Davis said] [t]hat Deb Clark had plotted with Commissioner Alfred to have me fired; that Deb Clark had conspired against the previous purchasing agent; that Deb Clark had complained to her subordinates about spending late hours at the office alone with me; that she complained to her subordinates about late night text messages; that her husband Mr. Kenny Clark had become jealous of the number of text messages and late hours at the office. The last thing that she mentioned was that Deb Clark owed her $300.

Anderson testified that he did not believe the allegations; however, Clark testified that Anderson told her to get a money order to repay Davis the money.[5] The next day, Anderson called Clark and Davis to his office. According to Davis, Anderson handed her the money order and said "'You're never to speak of this again. Ever.' And . . . he looked straight at me and he said, 'You are reprehensible. . . . This is the reason this department has such a terrible reputation.'"

---

[5] Clark testified that she had borrowed $1,265 from Davis, her subordinate. Clark also testified that she borrowed money from three other coworkers over the years, including from the prior purchasing agent, whom Clark had reported to the district attorney's office for using public resources for a personal business. That purchasing agent resigned as a result of the allegation. Clark also provided a written statement, stating in part that she told other employees that "Anderson does not know his job and here is someone else I have to train."

Further, Tina Williams wrote in her statement that Clark had spoken with Commissioner Alfred about Anderson transferring another employee, effective December 1, 2007, out of the Purchasing Department. The transferred employee had dwarfism. Williams wrote that Clark told Commissioner Alfred that "Mr. Anderson did not feel comfortable around [the transferred employee] and he uses the 'm-word.'" Clark clarified that the "m-word" is "midget."

Davis acknowledged that she talked with Anderson about the personal debt owed by Clark.

Anderson testified that "at that point I decided that it was no longer going to be a worthy working relationship, and I decided to terminate [Davis]." Clark, on the other hand, testified that she did not want Davis terminated or disciplined. Clark stated at trial that she repeatedly told Anderson she did not want Davis terminated, and that she told him that she and Davis could work together. According to Clark, Anderson said "there would be no peace in the office," but Davis testified that after the December meeting, there was no turmoil between her and Clark.

Anderson also testified that "virtually all" of the departments Davis served gave negative reports about her, but no evidence substantiating this testimony was introduced at trial. Although Anderson named three people whom he said complained about Davis's work, only one testified at trial, and that witness denied that she ever complained about Davis to anyone. Moreover, the County Clerk for Jefferson County testified that when Anderson asked her about Davis, she told him that there were no complaints about Davis or problems with her. Clark testified that she did not receive complaints about Davis, and she did not know if Davis was ever counseled about her job performance. Davis testified that she had good working relationships with all the departments she purchased for.

Anderson testified that he did not fire Davis in December because he "wasn't gonna terminate anybody prior to Christmas," and he did not fire her in January, because "there was a health issue in her family." He believed that Davis was on vacation after that, so "March was the earliest time that was really available." Anderson fired Davis in March without providing her an explanation.[6] Davis testified that she asked Anderson why he was terminating her employment,

---

[6] Anderson gave her the opportunity to resign rather than be terminated. She declined to resign.

and he stated that he would not discuss it with her.

After he fired her, Anderson told a man whom he had supervised in the Navy to apply for the position. That man was about Anderson's age and younger than Davis, and he was hired to replace her.[7]

## D. Analysis of Age as a Motivating Factor

The County concedes that Davis satisfied the requirements to establish a prima facie case of age discrimination. The County contends, however, that there is no evidence "that the reason offered for termination was a pretext for discrimination or that age discrimination was one of the reasons among many for the termination."[8] We hold that the evidence is legally sufficient to support the jury's finding that age was a motivating factor for the County's decision to terminate Davis.

### 1. *Direct Evidence of Age as a Motivating Factor*

Davis presented direct evidence of a discriminatory animus based on Anderson's statements and remarks. Anderson was "an individual with authority over the employment decision" who made statements "related to the employee's protected class" (i.e., age). *See AutoZone*, 272 S.W.3d at 593. But were these statements "close in time to" and "related to" the employment decision at issue? *See id.* Anderson's statements in the one-on-one meeting that Davis was "too old to be working here" and should retire were made nearly a year before her termination. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380–81 (5th Cir. 2010) (holding that evidence of a comment made almost a year before

---

[7] Anderson resigned a few months later; Davis's replacement resigned four months after that. Clark became the purchasing agent.

[8] The County identified no cases in which the authoring court concluded that the evidence before it was legally insufficient to support a finding that age was a motivating factor for an adverse employment action.

termination was insufficient to raise a genuine issue of material fact as to pretext); *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (holding that where a comment about the school having problems in the past with black coaches was made nearly a year before the non-renewal of the employee's teaching contract and the comment was "insignificant in comparison to the evidence of [the employee's] unfitness as a teacher," it was insufficient to establish discrimination).

Unlike the plaintiffs in *Jackson* and *Auguster*, however, Davis presented evidence that Anderson considered firing Davis around the same time that he made the comments in the one-on-one meeting. He also told Davis that she was "too old to be working" and should retire, which directly related to her non-employment with the County. We cannot ignore "'the potentially damning nature' of [Anderson's] age-related comments" merely because they might not have been made in the direct context of her termination; to do so would be to fail to draw all reasonable inferences in favor of the jury's verdict. *See Reeves*, 530 U.S. at 152, 120 S. Ct. at 2111 (explaining that the court of appeals erred by ignoring "critical evidence" of comments by a direct supervisor that the employee "was so old [he] must have come over on the Mayflower" and "was too damn old to do [his] job"; such evidence supported the jury's verdict that age was a motivating factor for the employee's termination).

A comment such as "you're too old to be working here" is a direct and unambiguous statement that would allow a reasonable jury to conclude that age was an impermissible factor in the decision to terminate Davis. *Compare Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 439 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (concluding that a human-resource manager's notes listing employees' ages was not probative of the employer's intent to discriminate, because for an age-based comment to be probative, "it must be direct and unambiguous, allowing

a reasonable jury to conclude without inferences or presumptions that age was an impermissible factor in the decision to terminate the employee"), *with Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 315–16 (5th Cir. 2004) (holding that a rational factfinder could conclude that age played a role in the employer's decision to terminate the employee when the supervisor made numerous ageist comments, such as telling the employee "you're too old" and suggesting the employee was "probably in bed or he's sleeping by [now] because of his age" (alterations in original)), *and Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 183 (2d Cir. 1992) (noting the "ample" evidence of age discrimination when the employer told the terminated employee he should not have hired other older employees who "should have been, or should have remained, retired," and the employer suggested there was "no way [a 60-year-old employee] can contribute" or that a 64-year-old employee could be "superior"); *see also Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 638 (5th Cir. 1985) (discussing the usual lack of direct evidence in an employment-discrimination case because "[e]mployers are rarely so cooperative as to . . . inform a dismissed employee candidly that he is too old for the job"), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 512–13, 113 S. Ct. 2742, 2750, 125 L. Ed. 2d 407 (1993).

Further, Davis testified that Anderson remarked at every staff meeting—as often as every week—that Davis was retiring soon, was the next person to go, and was "senior," although he knew that she did not intend to retire and was senior only in age and not experience. These comments suggest a link between Davis's age and her lack of continued employment with the County. Anderson also made at least one indirect age-related comment (about her birthday cake catching fire) several weeks before her termination. Frequent references to Davis's age support an inference of age discrimination. *See Ezell v. Potter*, 400 F.3d 1041, 1051 (7th

Cir. 2005) (noting that there was direct evidence of age discrimination where two supervisors expressed a desire to replace older workers with younger workers, and one supervisor "frequently made disparaging remarks about older workers, referred often to [the employee's] gray hair and beard, commented on his slowness and suggested that because of his speed, he should consider another line of work"); *Russell*, 235 F.3d at 226 (explaining that a supervisor's frequent reference to the employee as "old bitch" supported the jury's verdict that the employer had discriminatory motivations; "[t]hat [the employer] did not explicitly remark to [the employee], 'I do not like you because you are old,' does not render [the employee's] evidence infirm."); *Buckley v. Hosp. Corp. of Am., Inc.*, 758 F.2d 1525, 1530 (11th Cir. 1985) (reasoning that there was "substantial direct evidence" of discriminatory intent because the supervisor expressed surprise at the longevity of staff members, indicated that the employer needed "new blood" and that he intended to recruit younger employees, and commented on the employee's "advanced age" as a factor causing her stress); *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 480 (Tex. App.—El Paso 2013, pet. filed) (holding that there was legally sufficient direct evidence that age was a motivating factor in termination where the manager made comments "nonstop," "three or four times a week," and "all the time" that the employee was "old" and had "gray hair" and "sagging breasts"); *see also Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1466 (5th Cir. 1989) ("Indirect references to an employee's age can support an inference of age discrimination."), *cited in Machinchick v. PB Power, Inc.*, 398 F.3d 345, 353 & n.25 (5th Cir. 2005) (further noting that examples of such indirect age-related comments are "that an employee needed to look 'sharp' if he were going to seek a new job, and that he was unwilling and unable to 'adapt' to change" (quoting *Rachid*, 376 F.3d at 315)).

Based on the direct evidence of what Anderson said and did, reasonable and fair-minded people could have found that age was a motivating factor in Davis's termination.

### 2. *Pretext and Additional Evidence*

Davis also adduced evidence that the County's proffered reason for termination was a pretext for discrimination. Regarding the reason offered for termination, the County contends on appeal that Davis's complaints about Clark "clearly justified [Anderson's] conclusion . . . that there was 'no longer going to be a worthy working relationship.'"[9]

But Clark testified that she informed Anderson that she and Davis could work together, and she repeatedly told him that she did not want Davis fired. Davis similarly testified that there was no turmoil between Clark and her. And finally, considering the three-month delay in firing Davis after she complained about Clark, along with evidence that Anderson had wanted to fire Davis several weeks into his tenure, the jury could have believed that Davis's complaint about Clark was not Anderson's sole motive for firing Davis. *See City of Keller*, 168 S.W.3d at 819 ("Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another.").

When the evidence of pretext is considered in light of Anderson's repeated references to Davis's age—which were made in the context of Davis's lack of future employment with the County—a reasonable jury could have inferred that

---

[9] On appeal, the County does not suggest that Davis's job performance generally was a reason for her termination. Regardless, the testimony at trial from employees in other departments and employees in the Purchasing Department, and the meager evidence of poor work performance in general, would have enabled the jury to conclude that Davis's job performance was not the sole motivating factor for her termination.

14

Anderson intended to make Davis "the next one to go" at least in part because of her "senior" age. *See Knight v. Auto Zone, Inc.*, 494 F.3d 727, 730–31, 736 (8th Cir. 2007) (holding that there was legally sufficient evidence of age discrimination, because although the employer argued that the employee was terminated for engaging in verbally abusive behavior, the employee offered evidence that his work performance had been strong; that the manager documented no complaints about the employee's behavior before initiating an investigation; and that the manager repeatedly made negative age-related comments, such as referring to the employee as "old man" and "old fart" and telling the employee he was "too old to do his job"); *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922–23 (8th Cir. 2000) (holding that a factfinder could conclude that age was a determinative factor because even stray remarks, such as referring to the employee as "the old guy" and saying "[w]e need to get rid of the old guys," gave rise to an inference of discrimination when considered in conjunction with the prima facie case and evidence of pretext); *see also Quantum Chem. Corp.*, 47 S.W.3d at 481–82 ("Proving the employer's stated reason for the firing is pretext is ordinarily sufficient to permit the trier of fact to find that the employer was actually motivated by discrimination.").

On this record, the jury reasonably could have rejected the County's explanation for Davis's termination and concluded that Anderson's decision to terminate her employment was motivated in part by Davis's age. We therefore overrule the County's seventh issue.

## II. SECTION 1983 FREE SPEECH

In its first six issues and eighth issue, the County contends the evidence is legally insufficient to support the jury's various findings related to Davis's Section 1983 claim based on the exercise of her First Amendment right to free speech.

15

Neither party has briefed the question of whether we must consider the sufficiency of the evidence for this claim if we conclude there is legally sufficient evidence of age discrimination, as we concluded above.

Ordinarily, when a "judgment rests on multiple theories of recovery and one theory is valid, an appellate court need not address other theories." *Barbarawi v. Ahmad*, No. 14-07-00790-CV, 2008 WL 2261433, at *4 n.2 (Tex. App.—Houston [14th Dist.] May 27, 2008, no pet.) (mem. op.); *accord Harrison v. J.W. Nelson Transp., Inc.*, No. 14-09-00273-CV, 2010 WL 4013534, at *3 (Tex. App.— Houston [14th Dist.] Oct. 14, 2010, no pet.) (mem. op.) (declining to address negligence claims because the breach-of-warranty claim fully supported the damages and attorney's fees awarded). However, in its seventh issue (regarding age discrimination), the County contends that Davis's age-discrimination claim, "if supported by the evidence, would entitle [Davis] to a recovery of back wages and equitable relief only." For this proposition, the County cites a case interpreting the federal Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 626 (2012). *See generally Lorillard v. Pons*, 434 U.S. 575, 98 S. Ct. 866, 55 L. Ed. 2d 40 (1978).[10]

But Davis did not sue for a violation of the ADEA. She claimed a violation of the TCHRA, which authorizes recovery of each category of damages assessed by the jury.[11] *See* TEX. LAB. CODE ANN. § 21.2585(a), (d) (West 2006) (providing

---

[10] The damages assessed by the jury include some elements that are not recoverable under the ADEA, such as mental anguish. *See Comm'r of Internal Revenue v. Schleier*, 515 U.S. 323, 326, 115 S. Ct. 2159, 2162, 132 L. Ed. 2d 294 (1995) ("[T]he Courts of Appeals have unanimously held . . . that the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress.").

[11] The jury awarded damages as follows:

(1) Counseling expenses incurred in the past: $0.

(2) Mental anguish in the past: $50,000.

that damages for an unlawful intentional employment practice include compensatory damages such as "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses"); *id.* § 21.259 (authorizing recovery of attorney's fees); *Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 816, 819 (W.D. Tex. 2006) (noting that TCHRA allows for recovery of back pay, front pay, and compensatory damages such as mental anguish). Because Davis successfully asserted a cause of action for which these damages are available, it is unnecessary for us to address the County's issues numbered one through six and eight.

### III. FUTURE MENTAL ANGUISH

The County's ninth issue is stated as follows: "The verdict of the jury as to damages is so outrageous that it indicates that they failed to give the Defendant a fair hearing of the evidence it presented." Under the argument section of its brief, however, the County also contends, "There simply is a complete void in the evidence that would, by inference, or otherwise, lead to such an extraordinary award. . . . Appellant does contest the legal sufficiency of the evidence on damages. There is no evidence at all of future mental anguish." We therefore understand the County to challenge both the legal and factual sufficiency of the

---

(3) Mental Anguish that in reasonable probability Plaintiff will suffer in the future: $500,000.

(4) Loss of earnings in the past: $258,090.

(5) Loss of earnings that in reasonable probability Plaintiff will suffer in the future: $318,147.

(6) Loss of retirement, health, medical, and life insurance, and other similar fringe benefits in the past: $143,100.

(7) Loss of retirement, health, medical, and life insurance, and other similar fringe benefits that in reasonable probability Plaintiff will suffer in the future: $38,808.

The trial court also awarded $91,908.75 in attorney's fees and $1,867.58 in court costs and expenses, as well as pre- and post-judgment interest.

17

evidence supporting the jury's finding that $500,000 would fairly and reasonably compensate Davis for the mental anguish that, in reasonable probability, she will suffer in the future as a result of the termination of her employment.[12]

Where, as here, there were no objections to the jury charge, we measure the sufficiency of the evidence by the charge as submitted. *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 & n.30 (Tex. 2005). In the charge, "mental anguish" was defined as follows:

> "Mental anguish", as [an] element of damages, implies [a] relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of those, and it includes mental sensations of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, and/or public humiliation.

*See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (stating the test for proof of mental anguish). Regarding future mental anguish, the jury was instructed to find the amount that would fairly and reasonably compensate Davis for mental anguish "that in reasonable probability [she] will suffer in the future" as a result of her termination. *See Adams v. YMCA of San Antonio*, 265 S.W.3d 915, 917 (Tex. 2008) (per curiam) (holding that an award for future mental anguish must be supported by evidence demonstrating a reasonable probability that the claimant will suffer compensable mental anguish in the future). But there is no

---

[12] Our dissenting colleague would hold that the County waived this issue by failing to cite to the record, but when an appellant contends that there is "a complete absence of evidence" on an essential element, there is nothing specific to cite, and the appellate court must review the entire record. *See City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 167–68 (Tex. 2004) (per curiam). The County argued that the evidence of future mental anguish "is a complete void" and that "[t]here is no evidence at all of future mental anguish." We accordingly have reviewed the entire record, and the County is right: there is no such evidence, and thus, there was nothing to cite. Although the dissent also points out that the County did not identify the standard of review, this is not required by the Texas Rules of Appellate Procedure.

evidence that there is a reasonable probability that Davis will suffer a relatively high degree of mental pain and distress in the future as a result of her termination.

Davis testified only about mental anguish she had suffered in the past. She was asked how she felt (1) when being escorted to her desk to remove her things, (2) when she spoke with one of the county commissioners immediately after leaving the office on the day she was terminated, and (3) when she left her attorney's office the next day after consulting him about her termination. Davis then was asked how she spent the next few days or month. That exchange was as follows:

> Q: So, what happened? How did you spend the next few days not going to work? I don't know. Month? How long? What did you do?
>
> A: I was—I stayed in my house. I stayed in the house. I just wouldn't go outside. I didn't want to go anywhere. I was mortified at being fired. Just it hurt me. It really hurt me really bad because I love my job. I did a good job. . . . I felt really injured. I felt hurt. I was sick. I was really sick at home. Every time the phone would ring or if someone called to talk to me about it or someone wanted to come over and visit with me about it, I got sick to my stomach. I had intestinal problems. I had to go to my doctor and get medication for it.
>
> . . . .
>
> Q: And did she give you medication?
>
> A: She did. I had to get some medication for my colon. And I had something—I think it's called Ativan I got a generic of it. So, I don't know the real name. I don't know.
>
> Q: What was that for?
>
> A: That was a sedative sort of medicine.
>
> Q: And did there come a time when you went and saw another doctor?
>
> A: Yes, I did. I saw . . . a psychiatrist here in Beaumont.

19

Q:   Why did you go to a psychiatrist?

A:   I couldn't sleep at night.  I didn't want to go anywhere.  I was embarrassed.  I cried all the time.  I cried all the time.  I cried at night.  I cried during the day.  I just cried all the time.  I couldn't sleep at night.  I mean, my husband and I, we—he had bought this—a camp in Louisiana on a river, on a creek.  I—I couldn't go there.  I couldn't be—I couldn't be away from my house.  I just couldn't go somewhere.  I couldn't leave the house because I just felt horrible.  I don't know how to explain it.  I felt really bad all the time.  I was depressed really.  I was depressed.  My husband said I had to go because he couldn't stand it any more because he didn't like what was happening to me.

Davis was not asked if she continues to have intestinal problems or insomnia, and she did not testify that she is still under a doctor's care or has a continuing need to take medication.  Although there is evidence that Davis suffered "grief, severe disappointment, indignation, wounded pride, shame, despair, and/or public humiliation" at one time, all of her testimony about mental anguish was presented in the past tense.  Not only is there no evidence that there is a reasonable probability that Davis will suffer compensable mental anguish in the future, there is not even any evidence that she was continuing to experience mental anguish at the time of trial.

We sustain the County's ninth issue.

## IV. CONCLUSION

Although we have overruled each of the County's issues concerning liability and the scope of available relief, we agree that there is no evidence of future mental anguish. We accordingly modify the judgment to eliminate the award of $500,000 for future mental anguish, and affirm the judgment as modified.

/s/           Tracy Christopher
                    Justice

Panel consists of Justices Christopher, Jamison, and McCally (McCally, J., dissenting).