**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4447
_____

IN RE:
ARTHUR BALDWIN; LINDA COBB; JEROME
BULLOCK; ANGELA FORD; JOANNE ANDIORIO; J.W.
WALLACE; TWYLA JOHNSON; NICOLE GAINES;
WILLIAM THOMPKINS; ROY PENNER; MELODY
CAUSEY; JAMES SHEALEY; LEONARD R. DUNCAN;
RENEE FRAZIER; CLAUDIA ALLEN; EUGENE
DOWING; GEORGE CALLOWAY; B.J. LEBER;
REVERAND RONALD PETERS,

Petitioners
_____

On a Petition for a Writ of Mandamus from the United States
District Court
for the Western District of Pennsylvania
(Related to D.C. Civil No. 2-10-cv-00800)
_____

Argued May 31, 2012

Before: AMBRO, JORDAN, and VANASKIE, *Circuit
Judges*

(Filed: November 26, 2012)

1

Mark R. Hamilton, Esq. (ARGUED)
Phillip J. Sbrolla, Esq.
Rebecca Sember Izsak, Esq.
Cipriani & Werner, P.C.
650 Washington Road, Suite 700
Pittsburgh, PA 15228

*Counsel for Petitioners Arthur Baldwin, Linda Cobb, Jerome Bullock, Angela Ford, Joanne Marie Andiorio, J.W. Wallace, Twyla Johnson, Nicole Gaines, William Thompkins, Roy Penner, Leonard R. Duncan, Renee Frazier, Claudia Allen, Eugene Downing, George Calloway, B.J. Leber, and Reverend Ronald Peters*

Frank H. Scialdone, Esq.
Mazanec, Raskin & Ryder Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, OH 44139

*Counsel for Petitioners James Shealey and Mel Lee Causey*[1]

Nicholas D. Krawec, Esq.
Arthur W. Zamosky, Esq. (ARGUED)
Bernstein Law Firm P.C.
707 Grant Street, Suite 2200
Gulf Tower
Pittsburgh, PA 15219

---

[1] Mel Lee Causey is incorrectly identified in the caption as "Melody Causey."

*Counsel for Respondent Official Committee of
Unsecured Creditors, on Behalf of the Lemington
Home for the Aged*

_____

OPINION

_____

VANASKIE, *Circuit Judge*.

Concerned about the consequences of a District Court order setting a 7.5 hour per side limit on the parties' presentation of evidence at trial, the sixteen named defendants in this litigation (the "Lemington Defendants") seek a writ of mandamus to vacate the time- limit order.[2]  Because we believe that a direct appeal presents an adequate means for the Lemington Defendants to challenge the District Court's order, we will deny the petition for a writ of mandamus.

I.

The Lemington Home for the Aged (the "Home") is a non-profit nursing care facility in Pittsburgh, Pennsylvania. Beginning in the 1980's, the Home faced a series of escalating financial difficulties, eventually culminating in the Home ceasing to admit new patients and filing a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of Pennsylvania in 2005.  The Bankruptcy Court appointed a Committee of Unsecured

_____

[2] Although this petition's caption includes nineteen named defendants, the parties state that there are presently only sixteen named defendants.

Creditors (the "Committee"), approved closure of the Home, and authorized the Committee to commence adversary proceedings against the Home's officers and directors in the District Court.

On August 27, 2007, the Committee filed its second amended complaint on behalf of the debtor, asserting causes of action against the Lemington Defendants—former officers and directors of the Home—for breach of their fiduciary duties of care and loyalty and for deepening insolvency. The District Court granted summary judgment to the Lemington Defendants, holding that the business judgment rule and the doctrine of *in pari delicto* precluded the Committee's breach of fiduciary duty claims, and that the Committee failed to show fraud sufficient to support a deepening insolvency claim. We vacated the District Court's grant of summary judgment and remanded for trial. *See Official Comm. of Unsecured Creditors ex rel. Estate of Lemington Home for the Aged v. Baldwin* (*In re Lemington Home for the Aged*), 659 F.3d 282, 285 (3d Cir. 2011).

Following remand, the District Court issued an order on October 31, 2011, scheduling jury selection and trial for December 5, 2011. The District Court also scheduled a preliminary pre-trial conference for November 22, 2011 and a final pretrial conference for December 1, 2011.

Before the November 22, 2011 preliminary pretrial conference, the parties stipulated to fourteen facts and identified approximately 400 proposed exhibits. The parties also submitted proposed witness lists. The Committee stated that it intended to call up to fifty-one witnesses, and the Lemington Defendants stated that they intended to call up to

4

thirty-four witnesses. The Lemington Defendants' witness list included twenty definite witnesses and fourteen standby witnesses. Of the definite witnesses, five were expert witnesses and fifteen were fact witnesses. The Lemington Defendants' descriptions of many of their witnesses' intended testimony were similar. For example, the Lemington Defendants indicated that six of their definite director witnesses intended to testify as to their responsibilities to the Home and the reasons for the decision to cease admitting new residents to the Home and to file for bankruptcy in 2005.

On November 22, 2011, the District Court held a preliminary pretrial conference, during which it expressed frustration with what it viewed as the parties' failure to "streamline [the] case." (Lemington Defendants' Pet. at 31.) In particular, the District Court noted that "[t]he duplication of witnesses [was] overwhelming," and that the parties appeared "unwilling[] to stipulate to the most basic facts." (*Id.*) Explaining that it would not allow the parties to force the "jury [to] sit through endless repetitive testimony," the District Court limited each side's witness testimony to 7.5 hours and limited the parties' opening and closing statements to half an hour per side per statement. (*Id.*) In total, the District Court allowed each side 8.5 hours to present their cases.

The Lemington Defendants objected to the District Court's time-limit order, explaining that they did not believe that 8.5 hours was adequate time to present their case. The District Court responded that it viewed the expert testimony and exhibits as excessive and the fact witnesses as redundant. It did, however, offer the Lemington Defendants the option of extending their opening and closing time to forty minutes, if

5

they divided their opening and closing time between the officers and the directors. It thus extended the Lemington Defendants' total possible presentation time to eight hours and fifty minutes.

Following the November 22, 2011 conference, the parties stipulated to ten additional facts. The Lemington Defendants also added an additional definite witness to their witness list, and provided a supplemental list of thirty-seven possible creditor witnesses to testify regarding damages. The thirty-seven creditor witnesses were almost entirely custodian-of-records witnesses.

The Lemington Defendants also moved for reconsideration of the District Court's trial time-limit order, contending that they did not have warning that the District Court would impose such a short time limit, and that the time allotted to them was insufficient to present their case. The Lemington Defendants instead estimated that the trial would likely require a total of approximately sixteen days, or eight days per side.

The District Court held the final pretrial conference on December 2, 2011. Addressing the Lemington Defendants' motion for reconsideration, the District Court observed that, in view of its well-settled practice of trying cases "on the clock," the parties had fair warning that a time limit would be imposed. The District Court also expressed disappointment that the parties had not cooperated with each other since the November 22, 2011 conference, and reiterated that "[i]t's unfair to our jurors to bring them in here and just put witness after witness on the stand with repetitive testimony." (Lemington Defendants' Pet. at 89.) The District Court

6

concluded that it "would have been willing to give [the parties] a little more time or at least talk to [them] about [the time-limit order] if [they] had followed [its] suggestions," but because they did not "work with [the District Court] . . . [the District Court will] not . . . give [the parties] 16 days to try the case." (*Id.* at 97.) The District Court offered, however, to stay the trial and to certify the time-limit issue for appeal.

Based on the District Court's order certifying the time-limit issue for appeal, the Lemington Defendants petitioned for permission to appeal under 28 U.S.C. § 1292(b) and, in the alternative, for a writ of mandamus. We dismissed the petition to appeal under § 1292(b) because the District Court did not certify that the time-limit order "involve[d] a controlling question of law as to which there is substantial ground for difference of opinion" pursuant to § 1292(b). We now address the Lemington Defendants' petition for a writ of mandamus.

## II.

We have authority to issue a writ of mandamus under 28 U.S.C. § 1651(a), which permits "[t]he Supreme Court and all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[3] The writ of mandamus is available exclusively in

---

[3] Because 28 U.S.C. § 1651(a) allows us to issue writs of mandamus "in aid of" our jurisdiction, "the case must be one that lies within 'some present or potential exercise of appellate jurisdiction.'" *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1422 (3d Cir. 1991)

7

"exceptional circumstances." *Will v. United States*, 389 U.S. 90, 95 (1967) (citing *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217 (1945)). We ordinarily may issue "the writ only to confine inferior courts to their lawful jurisdiction or to compel them to exercise authority when they have a duty to do so." *De Masi v. Weiss*, 669 F.2d 114, 117 (3d Cir. 1982) (citing *Will*, 389 U.S. at 95). To obtain mandamus relief, "the petitioner must establish both that there is (1) 'no other adequate means' to attain the relief sought, and (2) a right to the writ that is 'clear and indisputable.'" *In re Briscoe*, 448 F.3d 201, 212 (3d Cir. 2006) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004)). Even if the petitioner satisfies both prerequisites, our decision to issue the writ remains discretionary. *Id.*

The Lemington Defendants argue that their right to the writ is clear and indisputable because the time-limit order is a clear abuse of discretion, and that they have no other adequate means to obtain relief because "without the granting of the Writ, [the Lemington Defendants'] pleas for adequate time to present their case at trial will go unheard, and there will be no way to rectify the harm imposed by the district court's time limitations *prior to* the time set for trial." (Lemington Defendants' Pet. at 17.) In particular, the Lemington Defendants emphasize that immediate review is necessary because, if the Lemington Defendants can appeal only after

_____

(quoting *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 591 (3d Cir. 1984)). This case is within the exercise of our potential appellate jurisdiction because the District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1334(b), and we may obtain jurisdiction after the District Court enters final judgment under 28 U.S.C. § 1291.

8

the District Court enters final judgment, "the appellate court [will] be asked to speculate on the defenses that [the Lemington Defendants] intended to present and to re-construct the case that [the Lemington Defendants] intended to set forth." (Lemington Defendants' Reply Br. at 14.) They also contend that the District Court's time-limit order "violates due process and has in effect denied . . . their right to a jury trial, thus, justifying mandamus relief under the law." (*Id.* at 13.)

A.

The "no other adequate means" requirement to mandamus relief "emanates from the final judgment rule," which ordinarily requires the parties to await the district court's entry of final judgment before seeking appellate review. *In re Diet Drugs Prods. Liab. Litig.*, 418 F.3d 372, 379 (3d Cir. 2005) (quoting *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1422 (3d Cir. 1991)); *see also In re Briscoe*, 448 F.3d at 212 ("An appellate court's overuse of the writ to review interlocutory district court decisions would undermine the Congressional policy against piecemeal appeals."). In accordance with our respect for the final judgment rule, "a writ of mandamus should not be issued where relief may be obtained through an ordinary appeal." *In re Chambers Dev. Co.*, 148 F.3d 214, 223 (3d Cir. 1998) (quoting *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 461 (3d Cir. 1996)).

Assuming that the Lemington Defendants lose at trial, they will be able to appeal the District Court's time-limit order following the entry of final judgment. *See, e.g.*, *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d

9

604, 611 (3d Cir. 1995) (reviewing a district court's trial time-limit order). Although we appreciate that postponing review until after the District Court enters final judgment may increase litigation costs by forcing the parties to try this case under conditions that possibly constitute reversible error, "adverse interlocutory rulings . . . [that] increase the cost of litigation, cause inconvenience, or result in unanticipated delay . . . typically do not . . . warrant the extraordinary step of mandamus intervention." *In re Briscoe*, 448 F.3d at 214 (citations omitted); *see also Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (a litigant has other adequate means to challenge a district court's order for a new trial in part because "[a] litigant is free to seek review of the propriety of such an order on direct appeal"). Moreover, the Lemington Defendants may win at trial, thereby avoiding our need to address their challenge to the time-limit order altogether.

We are not persuaded by the Lemington Defendants' argument that they may have difficulty demonstrating on appeal how the time-limit order caused them prejudice at trial. Although the Lemington Defendants are correct that the time-limit order will not be reversible error if the record indicates that it caused no prejudice at trial, the Lemington Defendants' possible need to show prejudice is no different than the burden on most litigants appealing purported trial errors. *See, e.g.*, *Duquesne Light Co.*, 66 F.3d at 611 ("[D]espite our concern about the district court's [time-limit decision], we will not reverse because we are unable to conclude that its ruling had any impact on the outcome of the case."). Indeed, the fact that the Lemington Defendants may be unable to show prejudice at trial suggests that their right to relief is not clear and indisputable, a *sine qua non* of

10

mandamus relief. *In re Briscoe*, 448 F.3d at 212. Accordingly, the Lemington Defendants' potential difficulty in demonstrating prejudice at trial militates *against* granting the writ, rather than in favor of granting it.

B.

We also reject the Lemington Defendants' argument that we may grant mandamus relief on the grounds that the District Court's time limit "has in effect denied [them] their right to a jury trial." (Lemington Defendants' Reply Br. at 13.) The Lemington Defendants correctly assert that writs of mandamus have issued to protect the right to a jury trial. *See, e.g.*, *Beacon Theatres v. Westover*, 359 U.S. 500, 511 (1959) ("[W]e think the right to grant mandamus to require [a] jury trial where it has been improperly denied is settled."); *Eldredge v. Gourley*, 505 F.2d 769, 770 (3d Cir. 1974) (granting a writ of mandamus to protect the right to a jury trial while the district court action remained pending); *see also Maloney v. Plunkett*, 854 F.2d 152, 154 (7th Cir. 1988) (noting that the Supreme Court has suggested that "a less stringent test [for mandamus] might be proper where the challenged ruling ha[s] infringed [on] the right to [a] jury trial"); *Golden v. Kelsey-Hayes Co.* (*In re Golden*), 73 F.3d 648, 658 (6th Cir. 1996) ("Where the constitutional right to a jury trial is involved, . . . some courts . . . have held that neither of the[] two preconditions [to mandamus relief] needs to be met.") (citations omitted).

The unsound premise of the Lemington Defendants' argument is that the time-limit order deprives them of their right to a jury trial. In fact, the order does not preclude adjudication of this controversy by a jury.

11

To avoid the indisputable fact that their right to a jury trial remains intact, the Lemington Defendants suggest that if mandamus relief is permissible prior to final judgment to protect the right *vel non* to a jury trial, then it is also permissible prior to final judgment to ensure "a fair jury trial." (Lemington Defendants' Pet. at 18.) Because the District Court's time-limit order does not, in the Lemington Defendants' view, provide adequate time for them to present their defenses, they assert that the time-limit order violates their right to a fair trial before a jury, and that they therefore may obtain mandamus relief before trial, regardless of the availability of relief after final judgment.

The Lemington Defendants' attempt to shoehorn a fair trial claim into a jury trial claim for which mandamus review may lie is unavailing. There is simply no basis for us to conclude that the time-limit order has the effect of depriving the parties of a jury trial. Nor can we decide *ex ante* that the effect of the time-limit order is so draconian and such a mockery of the trial process as to amount to no trial at all. It may be that, in this case, the time-limit order is found to be reversible error. But that determination must await the presentation of a record that identifies with precision the evidence that the Lemington Defendants were unable to present because the trial judge's clock ran out. To hold otherwise would invite parties to seek mandamus relief whenever they are "placed on the clock," requiring appellate courts to hazard guesses as to whether an impact of a time-limit order is so severe as to deprive a party of the right to a "fair" jury trial. We decline to endorse such use of the extraordinary remedy of the writ of mandamus.

12

Notably, we have recognized that a district court may impose limits on the parties' presentation time at trial, so long as the court both "mak[es] an informed analysis based on a review of the parties' proposed witness lists and proffered testimony" and "allocates trial time evenhandedly." *Duquesne Light Co.*, 66 F.3d at 610. Other circuits have likewise concluded that a district court may, in its discretion, set reasonable trial time limits. *See, e.g.*, *United States v. DeCologero*, 364 F.3d 12, 25 (1st Cir. 2004) ("[L]imits on witnesses and the time allowed to each side are permissible measures.") (citations omitted); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 520 (5th Cir. 1994) ("In the management of its docket, the court has an inherent right to place reasonable limitations on the time allotted to any given trial.") (citing *United States v. Reaves*, 636 F. Supp. 1575, 1577 (E.D. Ky. 1986)); *Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997) ("[A] district court has broad discretion to place limits on the presentation of evidence to prevent delay, waste of time, and needless presentation of cumulative evidence.") (citing *Duquesne Light Co.*, 66 F.3d at 609); *MCI Commc'ns Corp.*, 708 F.2d at 1172-73 (holding that reasonable trial time limits do not violate the right to a fair trial); *Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir. 1987) ("Trial courts have discretion to place reasonable limits on the presentation of evidence . . . .") (citations omitted); *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1508 (9th Cir. 1995) ("Generally, a district court may impose reasonable time limits on a trial.") (citations omitted).

Whether a District Court has abused its discretion in setting and administering a time-limit order is best addressed after trial, with a reviewing court able to assess a record that shows what was presented to the jury and what a party was

13

unable to present. Only then may an informed decision be made as to whether a party was denied a fair trial.[4]

In denying mandamus relief, we emphasize that we are not ruling on the propriety of the time-limit order. We appreciate that this is a complex case, that the Committee has sued sixteen individual defendants, and that many of the defendants may need to testify to present their own defenses, even if some of their testimony is duplicative. Because 7.5 hours may ultimately be too little time for the Lemington Defendants to adequately present their case, we do not conclude that the time-limit order is permissible or valid. We hold only that a post-judgment appeal is adequate to assure meaningful review of the propriety of the time-limit order.[5]

---

[4] The Lemington Defendants have not cited any case where an appellate court has held before trial that a time-limit order deprived a party of a fair trial.

[5] It is difficult to conceive how either side in this complex case could possibly present the necessary evidence to a jury in 7.5 hours of trial time. Although the Committee has not sought immediate review of the time-limit order, it did make clear at oral argument that it was not willing to concede that the order was a proper exercise of discretion. Instead, the Committee asserted that it was not waiving its right to challenge the time-limit order if it does not prevail at trial. It is also difficult to understand the District Court's rationale in allocating to the entire defense side of the case 7.5 hours of evidence presentation time given the fact that there may be different liability rules and defenses applicable to defendants who were members of the board of directors versus defendants who were officers of the non-profit entity. *Compare* 15 Pa. Cons. Stat. Ann. § 5712(a)-(b) (standard of

14

## III.

For the foregoing reasons, we will deny the petition for a writ of mandamus.

---

care for directors of a nonprofit corporation) *with* 15 Pa. Cons. Stat. Ann. § 5712(c) (standard of care for officers of a nonprofit corporation). We therefore urge the District Court to re-examine the time-limit order to avoid the necessity of a re-trial. We trust that if, at any time, the District Court is persuaded that any time limits it has set are not sufficient to allow for a fair presentation of the case, the Court will take appropriate steps to see that due process is satisfied.