**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1773**

E. RAY RAYNOR,

        Plaintiff – Appellee,

    v.

G4S SECURE SOLUTIONS (USA), INC.,

        Defendant – Appellant,

    and

CHUCK BROCK; DONALD S. ZECCARDI; MALCOLM C. BURCHETT; TIFANI A. GRUSKY; MICHAEL A. NAIL,

        Defendants.

**No. 18-1831**

E. RAY RAYNOR,

        Plaintiff – Appellant,

    v.

G4S SECURE SOLUTIONS (USA), INC.; CHUCK BROCK; DONALD S. ZECCARDI; MALCOLM C. BURCHETT; TIFANI A. GRUSKY; MICHAEL A. NAIL,

        Defendants – Appellees.

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, Chief District Judge. (3:17-cv-00160-FDW-DSC)

Submitted: February 19, 2020                    Decided: February 26, 2020

Before MOTZ, KING, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Kelly E. Eisenlohr-Moul, DINSMORE & SHOHL, LLP, Atlanta, Georgia; Joseph D. Budd, LEWIS BRISBOIS BISGAARD & SMITH LLP, Raleigh, North Carolina, for Appellant/Cross-Appellee. William E. Moore, Jr., Gray Layton Kersh. SOLOMAN FURR & SMITH PA, Gastonia, North Carolina, for Appellee/Cross-Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After 15 years of employment, G4S Secure Solutions, Inc. ("G4S"), fired E. Ray Raynor. He brings a host of federal and state law claims related to his employment and termination. The district court granted summary judgment to G4S on some of these claims. Others went to trial, where a jury found for G4S on some claims and for Raynor on others. Both G4S and Raynor then moved for judgment as a matter of law and in the alternative a new trial; Raynor also moved for attorney fees. The court granted Raynor's motions in part and denied them in part and denied G4S's motion in its entirety. G4S appeals this order, and Raynor cross-appeals. Raynor also asks us to reverse the grant of summary judgment in favor of G4S on his race discrimination and retaliation claim. For the reasons that follow, we affirm.[1]

I.

A.

In 2001, G4S, a provider of security services, hired Raynor as an hourly employee. The company promoted Raynor several times. From 2008 to 2014, Raynor served as Regional Manager of Field Support, a salaried position with benefits; he received favorable evaluations and had no history of formal discipline.

---

[1] In response to scheduling difficulties and then health concerns of counsel for G4S, we twice agreed to reschedule oral argument. Given Raynor's protest of the delays, we have expedited consideration of the appeal and, upon that consideration, conclude that the arguments are adequately presented in the briefs.

In September 2014, G4S released Raynor from his position as Regional Manager, purportedly due to budget cuts. Rather than terminate him, however, G4S Senior Regional Vice President Malcolm Burchett facilitated Raynor's transition to the position of Site Manager at a client site in Charlotte, North Carolina. Although technically a demotion, Raynor's salary and benefits stayed the same. Raynor remained in this position until 2015, when he was removed for reasons disputed by the parties.

Upon removing Raynor as Site Manager, G4S did not terminate him. Rather, considering Raynor to be a useful "utility player" within the company, Burchett arranged for Raynor to work for G4S in a series of short-term positions. Again, Raynor was employed in these positions without change to his compensation or benefits. In March 2016, in an alleged attempt to find Raynor a permanent "home" within G4S, Burchett offered Raynor two mid-level positions in Ohio, which Raynor ultimately declined (Raynor alleges these offers were illusory). Raynor's last active assignment for G4S ended on May 31, 2016.

The parties dispute the reasons for Raynor's eventual termination in the summer of 2016. On July 8, Raynor submitted a written inquiry asking to use his vacation time. When informed by G4S that he had none accrued, Raynor protested that he had earned vacation time. Internally, G4S began discussing Raynor's discharge and administratively terminated him without his knowledge. After G4S headquarters informed the local G4S office in North Carolina that a severance package would be appropriate, G4S administratively reinstated Raynor, again without his knowledge. The reinstatement was a formality to allow a severance package to be prepared. At an in-person meeting on

4

July 20, G4S informed Raynor that the company had "no more work for his skill set," and presented him with a severance package with an effective date of July 18, 2016. The package was contingent on a release of claims; it explained that G4S was terminating Raynor for cause, that he could not seek re-employment with the company, and that he was releasing all potential legal claims against the company.

Caught unaware by this turn of events, Raynor objected to the release and requested more information regarding his termination. G4S told him to put his questions and objections in writing. The following day, Raynor sent G4S a written memo with questions regarding the reasons for his termination and the specifics of the release. Approximately three weeks later, Burchett contacted Raynor and apologized for the release, which Burchett claimed was intended for another employee. Raynor again inquired about his vacation pay, and Burchett replied that he would look into it. In addition, Raynor informed Burchett that he had applied for another position with G4S in Raleigh, North Carolina, in hopes he would be considered for it.

That conversation was the last contact between the parties until the instigation of this suit. G4S administratively terminated Raynor a second time on August 26, 2016. Raynor did not receive any severance or payment for the vacation and leave time he alleged he was owed.

B.

Based on these facts, Raynor filed a charge with the Equal Employment Opportunity Commission, which issued a right to sue letter. Raynor then filed suit against G4S and the individual defendants in North Carolina state court; G4S removed. The complaint alleged

5

nine causes of action: wrongful discharge under North Carolina law; violation of North Carolina's wage and hour act; breach of contract (for violations of Raynor's 2014 Bonus Performance Contract); intentional and negligent infliction of emotional distress; race discrimination and retaliation in violation of Title VII and 42 U.S.C. § 1981; conspiracy to violate Raynor's constitutional rights pursuant to § 1985; violations of North Carolina's constitution; and punitive damages pursuant to North Carolina law.

The district court partially granted G4S's motion for judgment on the pleadings, concluding that aspects of Raynor's race discrimination and retaliation claim were time-barred and dismissing as meritless some of his other claims. Raynor does not appeal this order. G4S subsequently moved for summary judgment, which the district court granted as to the balance of the race discrimination and retaliation claim, the § 1985 claim, and the intentional and negligent infliction of emotional distress claims. The district court denied summary judgment as to the remaining claims for violation of North Carolina's wage and hour act and breach of contract. After discovery and shortly before trial, the district court allowed Raynor to amend his complaint to include an age discrimination claim under the Age Discrimination in Employment Act ("ADEA") and North Carolina law. A five-day jury trial on that and the remaining claims followed. The jury found for G4S on Raynor's age discrimination and breach of contract claims, and for Raynor on his other state law claims. The jury found G4S liable to Raynor for $21,409.76 in compensatory damages and $64,347.52 in punitive damages.

The parties filed multiple post-trial motions. G4S moved for judgment as a matter of law or to alter or amend the judgment or for a new trial. Raynor moved for a new trial,

relief from final judgment, and attorney fees pursuant to N.C. Gen. Stat. §1D-45 and Fed. R. Civ. P. 37. The court denied G4S's motion in its entirety. It partially granted Raynor's motion for attorney fees in the amount of $31,808, based on expenses incurred by Raynor's counsel in moving to compel discovery. It denied the remainder of Raynor's post-trial motions. G4S appealed and Raynor cross-appealed.

## II.

Raynor appeals the district court's grant of summary judgment to G4S on Raynor's race discrimination and retaliation claim under Title VII and 42 U.S.C. § 1981.[2] We review a grant of summary judgment de novo. *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015).

We turn first to Raynor's allegation of disparate treatment. As Raynor presents no direct evidence of discrimination, we use the *McDonnell Douglas* burden-shifting framework to assess his disparate treatment theory. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under this framework, Raynor must establish a prima facie case of discrimination, at which point the burden of production shifts to G4S to prove by a preponderance of the evidence that it had a legitimate, non-discriminatory

---

[2] Raynor's notice of appeal also stated that he was appealing the court's grant of summary judgment on his claim brought pursuant to 42 U.S.C. § 1985 and claims against individual defendants Malcolm Burchett, Tifani Grusky, and Michael Nail. He does not properly raise these claims in his opening brief, however, and they are therefore deemed abandoned. *See United States v. Brooks*, 524 F.3d 549, 556 n. 11 (4th Cir. 2008); *Yousefi v. United States INS*, 260 F.3d 318, 326 (4th Cir. 2001); *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n. 6 (4th Cir. 1999).

reason for Raynor's firing. If G4S does so, the burden then shifts back to Raynor to prove, by a preponderance of the evidence, that the stated reason is pretextual and the real reason is discriminatory. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). To establish a prima facie case of discrimination, Raynor must demonstrate that he: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was performing at a level that met his employer's legitimate expectations; and (4) was treated differently from similarly situated employees ("comparators") outside the protected class. *Id.* at 219; *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010).

Before the district court, Raynor identified as comparators Tifani Grusky (respecting his allegation that he was terminated for turning down job opportunities within G4S) and various employees who were given more generous severance packages than him (respecting his allegation that he was discriminated against with respect to the conditions, terms, and compensations of his employment). The district court rejected the comparators for a variety of reasons.

Raynor offers no argument in his opening brief regarding his prima facie case beyond two conclusory assertions that he received less favorable severance packages than white employees fired for misconduct, assertions rejected by the district court. Instead, he attempts to resurrect time-barred aspects of his claim[3] and focuses on his accusation that G4S's reasons for his dismissal are pretextual. We conclude that Raynor has abandoned his argument regarding comparators for failure to develop it. *See United States v. Al-*

---

[3] Raynor has not appealed the district court's judgment that all employment actions prior to May 4, 2016 are time-barred, and so we only consider post-May 4 events.

*Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004).  Because Raynor has not demonstrated a prima facie case, his disparate treatment theory fails.

We next consider Raynor's allegation of retaliation.  The district court granted summary judgment to G4S because Raynor did not show a causal connection between a protected act and an adverse employment action.  We agree.  Even if Raynor's written response to his severance package could be construed as giving notice of a complaint (a protected activity), the record evidence establishes that G4S had by that time already made the decision to fire him.  Indeed, Raynor does not dispute the fact that G4S decided to fire him prior to his written response to the severance package and release.  Summary judgment on Raynor's retaliation theory was therefore proper.[4]

Finally, as the district court explained, several actions Raynor offers in support of his hostile environment theory are actually transparent attempts to evade the statute of limitations barring discrete disparate treatment allegations.  As the district court concluded, the actions not barred by limitations that Raynor alleges demonstrate a hostile environment were not sufficiently severe or pervasive to give rise to a hostile work environment.

---

[4] Before the district court, Raynor alleged there were genuinely disputed issues of fact regarding "motive, state of mind, intent, purpose and credibility" regarding the administrative termination and the severance package but did not dispute that G4S decided to terminate him before he received the severance letter.

9

At the end of the summary judgment hearing, the district court asked how much time each party estimated the trial would take. G4S's counsel responded, "I think we can get this done in two . . . days." Raynor's counsel explained that he was still assessing his case in light of discovery, but asserted "I'm sure we can do it in a few days as presently postured." The district court then stressed it believed the case was "a two-day trial at most" and "reserv[ed] the right to use a chess clock to keep us moving." Neither party objected.

Prior to trial, the district court confirmed that it was imposing a limit of 7.5 hours on each party. Each side would have that time to present its case, including opening, closing, and evidence, but the limits excluded objections and voir dire. At several points during trial, the court apprised the parties of their remaining time. G4S presented its case within the time limit, but Raynor struggled to do so. On the third day of trial, having used almost all of his time, Raynor's counsel requested and received additional time: 50 minutes to show a video deposition, 30 minutes for additional cross-examination, and 30 minutes for closing argument. At the end of this period, Raynor had called only four of his seven witnesses and introduced only 33 of his 59 exhibits.

The parties concede that, in principle, a district court may set trial time limits. But both now protest, for different reasons, that the limits in this case unfairly prejudiced them.

B.

There is no explicit source permitting trial judges to set time limitations on the overall presentation of evidence. Nonetheless, our sister circuits have unanimously

10

suggested that the practice is within the authority of the district court. *See, e.g.*, *In re Baldwin*, 700 F.3d 122, 129 (3d Cir. 2012) (collecting cases); *Life Plus Intern. v. Brown*, 317 F.3d 799, 807 (8th Cir. 2003); *Sparshott v. Feld Entm't., Inc.*, 311 F.3d 425, 433 (D.C. Cir. 2002); *Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1508 (9th Cir. 1995); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 520 (5th Cir. 1994); *Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir. 1987); *MCI Comms. v. AT&T*, 708 F.2d 1081 (7th Cir. 1982). These decisions have generally inferred this authority from the Federal Rules of Civil Procedure and the Federal Rules of Evidence, which confer wide discretion on district courts to manage the presentation of evidence and assure a fair and efficient trial.[5]

To be sure, reviewing courts have not given district courts free rein to manage time limits. Appellate courts have uniformly reviewed such impositions for abuse of discretion, disfavoring time limits that are set, managed, or revoked in an arbitrary or inflexible way. *See, e.g.*, *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 610 (3d Cir. 1995); *McKnight v. General Motors Corp.*, 908 F.2d 104, 114–15 (7th Cir. 1990); *Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir. 1987).

We agree that the district court has the authority in a civil case to limit the presentation of evidence by imposing overarching time limits on each party, although we stress that district courts should not adopt this practice as a "matter of course."[6] *Duquesne*

---

[5] Federal Rule of Civil Procedure 1, for example, emphasizes that a trial should be both fair and efficient, while the Federal Rules of Evidence (e.g., Fed. R. Evid. 102, 403, 611) allow judges to issue pretrial orders limiting proof and allow courts to exclude evidence to avoid wasting time. Some courts have relied on the district court's inherent right to control its docket rather than the Rules. *See, e.g.*, *Deus*, 15 F.3d at 510.

[6] We do not opine about the appropriateness of such time limits in a criminal case.

*Light Co.* 66 F.3d at 310.  ("[D]istrict courts should not exercise this discretion as a matter of course . . .  Rather, a district court should impose time limits only when necessary, after making an informed analysis based on a review of the parties' proposed witness lists and proffered testimony, as well as their estimates of trial time.").  The district court's power in this respect is not unbounded.  Efficiency is an important value in our judicial system, but it is not the only one.  There comes a point at which the pursuit of trial efficiency undermines the fundamental fairness of a trial.  The creativity of the human spirit suggests it would be unwise to enumerate the ways in which time limits might undermine trial fairness.  Eschewing a bright line rule, we think that the touchstone is the reasonableness of both the limits themselves and the district court's implementation of them.  We adopt abuse of discretion as the appropriate standard for our review.

C.

With these principles in mind, we consider the parties' arguments.

G4S argues that the district court unfairly granted Raynor additional time.  The company contends that it "would [] have greatly benefited from the ability to prepare a longer case."  The record belies this contention.  G4S did not exhaust the time it was given.  Beyond this, G4S presents no persuasive evidence that it would have benefited from more time.  The company maintains that it could have done more with additional time, given Raynor's "intransigent" testimony.  The excerpts in G4S's brief offer no support for their position; if anything, Raynor's combative testimony may have helped G4S by making Raynor look like the difficult employee G4S alleged him to be.  Undeterred, G4S generally claims that it would have prepared its case differently had it known about the potential for

12

extra time, with the implication that the verdict might have come out differently. But this doesn't make it so. Moreover, G4S's claim that counsel should have received more time is at odds with its rejection of the district court's tentative offer of extra time in light of the additional time granted to Raynor. G4S can hardly protest now, having refused the district court's offer, that the district court committed reversible error.

Though G4S believes the district court's accommodation to Raynor went too far, Raynor insists that the district court should have gone further. He argues that the time limits were arbitrary, that they were inappropriate given the complex facts and number of claims, that changing the limits mid-trial (a change which inured to his benefit) was an abuse of discretion, and that the time limits should have been explained to the jury. According to Raynor, these alleged flaws deprived him of a fair trial.

A 7.5-hour time limit might be inappropriate in many circumstances. We recognize that Raynor could not call several of his witnesses and that his cross-examination was cut short. Nonetheless, we do not think the record here demonstrates that the court abused its discretion. The court indicated that it would impose time limits after summary judgment and in consideration of the parties' pre-trial submissions, including their exhibit and witness lists and their own estimates of trial time. When the court announced the limits, Raynor did not object. Apprised of these limits in advance of trial, Raynor had notice and adequate time to craft his case. Raynor did have the burden of persuasion on multiple claims, a fact that might be persuasive in other circumstances. Here, however, it cuts both ways, as all of these claims related to the same set of relatively uncomplicated facts surrounding the final years of Raynor's tenure at G4S. The record also shows that although

13

Raynor's counsel exhausted his 7.5 hours in part due to his focus on witnesses and facts marginal to his case, the district court nonetheless granted additional time. Viewed in its entirely, the record indicates that Raynor was given a fair chance to present his case to the jury. We are left with the impression that the partial failure of Raynor's case was attributable to the limitations of his evidence, rather than time constraints. We cannot conclude that the district court abused its discretion.

IV.

We turn to the litigants' challenges to the district court's award of attorney fees. We review the award of fees under Fed. R. Civ. P. 37 for abuse of discretion. *Southern States Rack and Fixture, Inc v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003). We use the same standard to review awards pursuant to N.C. Gen. Stat. § 1D-45. *See Philips v. Pitt Cty. Mem'l. Hosp., Inc.*, 775 S.E.2d 882, 884 (2015).

Prior to trial, Raynor moved for an order compelling discovery and sanctions. The court granted the motion in part and denied it in part, ruling that G4S had failed to timely disclose or supplement discovery requests as required by Rule 26, failed to produce non-privileged documents as requested under Rule 34, and did not designate a prepared deponent to answer questions as the Rule 30(b)(6) witness. As a result of these discovery abuses, the court awarded fees under Rule 37(a)(5)(A) and 37(c)(1). But the court granted less than the full amount Raynor requested, primarily because the court found his timekeeping records insufficiently specific. Both G4S and Raynor complain about the

14

award of fees: the former, that it was not enough, the latter that it was too much. We reject these arguments.

G4S does not contest that the time spent working on the motion is compensable under Rule 37. Instead, it attacks the district court's calculation of the actual amount of fees as arbitrary because of lack of support in the billing documents. The district court considered the billing rate (which G4S does not contest) and the total number of hours. G4S seeks to impose a requirement that the district court not only "roughly approximate[] the fee" but calculate the *exact* amount. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). That is more than is required here. The court did not need to determine the amount awarded with the exacting specificity demanded by G4S, but only determine a "reasonable" amount. For his part, Raynor contends that the district court unfairly cut his counsel's billable hours. Given that he offers no response to the district court's conclusion that counsel billed for some time not authorized by Rule 37, we cannot hold the district court abused its discretion.

Raynor also raises two other claims as to the district court's denial of all requested attorney fees: that the district court erred in denying Raynor's motion for fees under N.C. Gen. Stat. § 1D-45, which authorizes fees against a defendant who asserts a defense that the defendant knows or should know is frivolous or malicious, and that the district court erred by failing to rule on his "statutory entitlement" to fees pursuant to N.C. Gen. Stat. § 95-25.22(d). As to the former, the district court concluded that G4S's actions did not meet the high bar needed to justify such an award, noting that fees were awarded in cases where the defendants perjured themselves or persistently denied a fact they later admitted

15

to be true.  The court listed four separate points on which G4S had "legitimate grounds for contesting the [punitive damages] claim," rendering these defenses non-frivolous.  These grounds were reasonable, and we therefore find no abuse of discretion.

As to Raynor's claim to entitlement to fees under § 95-25.22(d), his argument fails for two independent reasons.  First, that provision is not mandatory; it is permissive ("The court, in any action brought under this Article may . . . order costs and fees of the action and reasonable attorneys' fees . . . .").  Second, and more importantly, there is nothing in the record before us that suggests Raynor actually moved for such fees; he asked only for fees under N.C. Gen. Stat. § 1D-45 and Fed. R. Civ. P. 37.  He cannot now complain that the court failed to infer that he actually wanted fees pursuant to a section of the statute he omitted from his motions.


V.


We have examined the parties' remaining claims and have determined all are without merit.  Accordingly, the judgment of the district court is in all respects

*AFFIRMED*.

16